ESTATE OF ROGER D. BOWLING, DECEASED, C. LLOYD CLAY, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 47121-86.        Filed August 31, 1989.

*Jerry A. Williams,* for the petitioner.
*Carolyn Lee Harber,* for the respondent.

SWIFT, *Judge:* Respondent determined a deficiency of $208,394 in the Federal estate tax liability of the estate of Roger D. Bowling. The issue in dispute is whether the interest passing to the surviving spouse was an income interest under section 2056(b)(7)[1] that qualifies for the marital deduction.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Decedent, Roger D. Bowling, died on December 25, 1982. Decedent was survived by his spouse, Patricia Lynn Pitts Bowling, by his son, Roger D. Bowling, Jr., and by his brother, Hershel Bowling. On the date of his death, decedent was a resident of Clayton, Georgia.

Decedent's son was born with Tuberous Sclerosis which is characterized by mental retardation, and his son apparently has a life expectancy of less than 20 years. At the time of trial, decedent's son was institutionalized.

Four days prior to his death, decedent hired C. Lloyd Clay, an attorney, to draft his will. The will was signed by decedent on December 22, 1982, and it was submitted for probate on January 3, 1983.

Under paragraph II(f) of the will, a testamentary trust was established primarily for the benefit of decedent's surviving spouse. The corpus of the trust consisted of royalty rights in songs decedent had composed and other business interests. The named trustee of the testamentary trust was Al C. Mifflin, III.

In general, paragraph II(f)(1) of the will provides for the trust to make annual income distributions to decedent's surviving spouse for her life. The source of the income distributions to the surviving spouse is variously described in the trust document as trust "corpus," "proceeds," and "net income." The relevant paragraph provides as follows:

Said Trustee shall continue to receive the royalties and income from those businesses which he managed for me during my lifetime and shall invest and reinvest the property and accumulate the income therefrom, add it to and make it a part of the corpus of said Trust during the term

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

of said Trust and shall distribute the proceeds to my wife, provided she shall survive me, on a monthly basis, based upon a yearly distribution of $30,000.00, after taxes, to her for so long as she may live. This net income distribution of $30,000.00 per year (after taxes) shall be increased on an annual basis at a percentage rate equal to the percentage increase in the Cost of Living Index as published by the U.S. Government, with said increase to begin with the January payment each year based on the previous year's increase, if any.

Decedent's will then provides generally that if decedent and his spouse are survived by his son, a distribution of the "proceeds" of the testamentary trust are to be made to decedent's son for life. Paragraph II(f)(2) of the will provides as follows:

(2) In the event my wife predeceases me or in the event that we should die in a common disaster and my son, ROGER DALE BOWLING, JR., shall survive me, then I direct my Trustee to distribute the proceeds from said Trust to my son's Guardian in conformity with the distribution procedure as stated in Paragraph (1) herein for so long as he may live.

The will provides further that if decedent, decedent's spouse, and decedent's son are survived by decedent's brother, a distribution of trust "proceeds" are to be made to decedent's brother for life. Paragraph II(f)(3) of the will provides as follows:

(3) In the event that both my wife and son shall predecease me or die as a result of a common disaster or in the event that either my wife or son shall survive me and receive benefits from said trust account for a period of time, and provided further, that my brother, HERSHEL BOWLING, shall survive me and shall also survive the last named beneficiary of said Trust (my wife and son), then in such an event, I direct my Trustee to pay the proceeds from said trust account to my brother, HERSHEL BOWLING, according to the rate and method specified in Paragraph (1) herein for so long as he may live.

Paragraph II(f)(4) of the will grants the entire remainder interest in decedent's estate, including the residue of the corpus of the above testamentary trust, to a medical research foundation for research of Tuberous Sclerosis.

Paragraph IV(e) of the will reflects that the executor and trustee are to furnish a statement of receipts and disbursements to the "income beneficiaries" as follows:

I hereby name and appoint my attorney, C. LLOYD CLAY, to serve as Executor of my Will. The Executor and Trustee of my estate shall have

the authority to exercise any of the powers and privileges herein stated without order of or report to any Court or officer whatsoever:

\*    \*    \*    \*    \*    \*    \*

(e) To serve without making and filing inventory and appraisement, without filing any annual or other returns or reports to any Court and without giving bond; but shall furnish, at least annually, a statement of receipts and disbursements to the income beneficiaries; \* \* \*

Critical to the issue before us is the language of paragraph IV(g) of the will which gives the trustee of the testamentary trust discretionary power to invade trust corpus in the event the "emergency needs" of "any beneficiary" of the trust make such invasion necessary. The paragraph provides as follows:

(g) The Trustee named herein shall be authorized to encroach upon the corpus of said Trust for any emergency needs which effect the support, maintenance and health needs of any beneficiary of said Trust, with said encroachment to be at the discretion of said Trustee.

After decedent's death, upon notification of being designated trustee of decedent's testamentary trust, Mr. Mifflin orally renounced his designation as trustee. The record is not clear who served as successor trustee.

Mr. Clay, the attorney who drafted the will, was named executor of the will and was responsible for filing decedent's Federal estate tax return. To prepare the return, Mr. Clay hired Thomas H. Powell, Jr., a certified public accountant. Mr. Powell and his associate, Nadine Daniel, completed the return and submitted it to Mr. Clay. Mr. Clay signed the return as executor, and Mr. Powell signed as preparer. On September 26, 1983, the return was timely filed on behalf of the estate.

The particular form used by the estate to file decedent's Federal estate tax return was the Form 706 revised by respondent in June of 1982. On page 2 of the return the following question was answered in the negative: "Do you elect to claim a marital deduction for an otherwise nondeductible interest under section 2056(b)(7)?"

On Schedule M to the return, which schedule was entitled "Bequests, etc., to Surviving Spouse," the estate claimed that property with a value of $855,874.37 passed under the will to decedent's surviving spouse. Various properties were

listed on the Schedule M, including insurance policies, real estate, and cars.

The first property listed on the Schedule M was the life income interest of the surviving spouse, described as follows:

Present value of $30,000 per year after taxes for life to spouse—value given by Life Ins. Co. of Virginia, Atlanta, GA using factor of 8.361 and interest factor of 12.85---------$466,456.38

None of the properties listed on the Schedule M were labeled, grouped separately, or referred to as qualified terminable interest property (hereinafter sometimes referred to as "QTIP" property).

In calculating the Federal estate tax liability reported on the return, the estate treated the $466,456.38 present value of the life income interest passing to the surviving spouse as QTIP property and as qualifying for the marital deduction, and the estate deducted the $466,456.38 value placed thereon from the gross estate.

Upon audit, respondent disallowed the marital deduction claimed with respect to the surviving spouse's life income interest on the grounds that the interest was a terminable interest that did not qualify for the marital deduction and that the required QTIP election was not properly made on decedent's Federal estate tax return.

OPINION

Section 2056(b)(7)[2] allows a marital deduction for QTIP property, which is defined as property passing from the

---

2

SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

      \*      \*      \*      \*      \*      \*      \*

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST —

      \*      \*      \*      \*      \*      \*      \*

(7) ELECTION WITH RESPECT TO LIFE ESTATE FOR SURVIVING SPOUSE.—

(A) IN GENERAL —In the case of qualified terminable interest property—

(i) for purposes of subsection (a), such property shall be treated as passing to the surviving spouse, and

(ii) for purposes of paragraph (1)(A), no part of such property shall be treated as passing to any person other than the surviving spouse.

(B) QUALIFIED TERMINABLE INTEREST PROPERTY DEFINED.—For purposes of this paragraph—

(i) IN GENERAL.—The term "qualified terminable interest property" means property—

(I) which passes from the decedent,

(II) in which the surviving spouse has a qualifying income interest for life, and

(III) to which an election under this paragraph applies.

decedent to the surviving spouse in which the surviving spouse has a "qualifying income interest for life." Generally, a qualifying income interest for life exists where the surviving spouse receives from the decedent an income interest under which the surviving spouse, for his or her life, is entitled to all of the income derived from the QTIP property payable annually or at more frequent intervals and where no person, including the surviving spouse, has the power to appoint any part of the property subject to the qualifying income interest to any person other than the surviving spouse. Secs. 2056(b)(7)(B)(ii)(I) and (II).

As originally enacted, section 2056(b)(7) also required that a QTIP election be made on the Federal estate tax return in order to obtain QTIP treatment for a qualified property interest. Sec. 2056(b)(7)(B)(v); *Estate of Higgins v. Commissioner,* 91 T.C. 61, 68 (1988). See also *Estate of Novotny v. Commissioner,* 93 T.C. 12 (1989).

In 1988, section 2056(b)(7) was amended by adding subparagraph (C) in order to clarify that where certain additional annuity interests are transferred to the surviving spouse for life and where only the surviving spouse has a right to receive any payments from such an interest during the surviving spouse's life, the fair market value of the annuity will constitute a "qualifying income interest for life" under section 2056(b)(7)(C).[3] Technical and Miscella-

---

(ii) QUALIFYING INCOME INTEREST FOR LIFE.—The surviving spouse has a qualifying income interest for life if—

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, and

(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse. To the extent provided in regulations, an annuity shall be treated in a manner similar to an income interest in property (regardless of whether the property from which the annuity is payable can be separately identified).

(iii) PROPERTY INCLUDES INTEREST THEREIN.—The term "property" includes an interest in property.

(iv) SPECIFIC PORTION TREATED AS SEPARATE PROPERTY.—A specific portion of property shall be treated as separate property.

(v) ELECTION.—An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

[3]Sec. 2056(b)(7)(C) provides as follows:

(C) TREATMENT OF SURVIVOR ANNUITIES.—In the case of an annuity where only the surviving spouse has the right to receive payments before the death of such surviving spouse—

(i) the interest of such surviving spouse shall be treated as a qualifying income interest for life, and

neous Revenue Act of 1988, sec. 6152(a), Pub. L. 100-647, 102 Stat. 3725. Under this provision, which was made retroactively applicable to decedents dying after December 31, 1981, no QTIP election on the estate tax return is necessary. In general, if the annuity qualifies under this provision, it automatically is treated as QTIP property unless the estate, within 2 years after the date of enactment, affirmatively elects not to have it so treated. Sec. 2056(b)(7)(C)(ii); secs. 6152(c)(2) and (3), Pub. L. 100-647, 102 Stat. 3726.

In general, where the QTIP requirements of section 2056(b)(7) are satisfied, the entire property (namely, the life income interest and the remainder of the underlying QTIP property) is treated as passing to the surviving spouse and qualifies for the marital deduction. Secs. 2056(a) and (b)(7)(A)(i); *Estate of Higgins v. Commissioner,* 91 T.C. at 68. To the extent not consumed or disposed of during the surviving spouse's life, the value of the entire property is included in the gross estate of the surviving spouse.

In this case, respondent argues that in the event decedent's wife survives decedent, the language of paragraph IV(g) of the will authorizes the trustee to invade the corpus of decedent's testamentary trust to meet the emergency needs of beneficiaries other than the surviving spouse (namely, decedent's son and decedent's brother). Respondent therefore argues that some of the trust property could have passed to someone other than the surviving spouse during the surviving spouse's life and that, under the original version of section 2056(b)(7) and under the retroactive 1988 amendment thereto, the trust property does not qualify as QTIP property with respect to which a marital deduction is allowed. Respondent alternatively also argues that the surviving spouse's interest is not an interest covered by the 1988 amendment to section 2056(b)(7) and therefore is governed by the affirmative election requirements of section 2056(b)(7) (as effective prior to the 1988 amendment), which respondent argues the estate did not satisfy.

---

(ii) the executor shall be treated as having made an election under the subsection with respect to such annuity unless the executor otherwise elects on the return of tax imposed by section 2001.

An election under clause (ii), once made, shall be irrevocable.

Petitioner argues that the language of paragraph IV(g) of the will authorizes the trustee to invade trust corpus only for the current income recipient of the trust (namely, the surviving spouse) and therefore that the interest passing to the surviving spouse was a qualifying income interest for life which qualifies as QTIP property. With regard to respondent's alternative argument, petitioner argues that the surviving spouse's income interest qualifies under the 1988 amendment to section 2056(b)(7) and that the automatic and retroactive QTIP election provisions thereof moot the question of whether the QTIP election was properly made on decedent's Federal estate tax return. We agree with respondent as to his first argument and therefore need not address the alternative argument.

For purposes of the marital deduction and in determining the nature of property interests passing to a surviving spouse, the law of the jurisdiction is applied under which the interest passes—in this case, Georgia. *Estate of Holland v. Commissioner,* 64 T.C. 499, 503 (1975). Georgia law provides the following general principles to be applied in construing wills:

> In the construction of all wills, the court shall seek diligently for the intention of the testator and shall give effect to the same as far as it may be consistent with the rules of law. To this end, the court may transpose sentences or clauses, change connecting conjunctions, and supply omitted words in cases in which a clause as it stands is unintelligible or inoperative and the proof of intention is clear and unquestionable. However, if a clause as it stands may have effect, it shall be so construed, however well satisfied the court may be of a different testamentary intention. [Ga. Code Ann. sec. 53-2-91 (1982).]

Thus under Georgia law, the cardinal rule in the construction of wills and trusts is to give effect to the intent of the testator or settlor. *Perling v. Citizens & Southern Nat. Bank,* 250 Ga. 674, 300 S.E.2d 649, 651 (1983); *Griffith v. First Nat. Bank & Trust Co.,* 249 Ga. 143, 287 S.E.2d 526, 529 (1982); *Riser v. Trust Co. of Ga.,* 231 Ga. 155, 200 S.E.2d 756, 757 (1973).

Generally, the testator's intent is ascertained from the four corners of the will, and harmony is sought between all provisions of the will. *Riser v. Trust Co. of Ga.,* 200 S.E.2d at 757; see also *Coppage v. Trust Co. Bank,* 236 Ga. 360,

223 S.E.2d 720, 721 (1976); *Love v. Fulton National Bank of Atlanta,* 213 Ga. 887, 102 S.E.2d 488, 491 (1958). Where the language is clear and can be given legal effect as it stands, the court in construing the will shall adhere to the plain meaning of the language of the document. *Seymour v. Presley,* 239 Ga. 572, 238 S.E.2d 347, 349 (1977); *Davant v. Shaw,* 206 Ga. 843, 59 S.E.2d 500, 502 (1950). Where the language is ambiguous, extrinsic evidence and circumstances surrounding the testator at the time he executed the will are to be considered. *DuBose v. Box,* 246 Ga. 660, 273 S.E.2d 101, 106 (1980); *Donehoo v. Donehoo,* 229 Ga. 627, 193 S.E.2d 827, 829 (1972). Each will is unique and must be construed according to its specific language. *Norton v. Georgia R.R. Bank & Trust,* 253 Ga. 596, 322 S.E.2d 870, 874 (1984).

As we read the provisions of decedent's will and considering all of the evidence before us, it is our conclusion that the decedent intended to grant the trustee of the testamentary trust power to invade trust corpus during the life of his surviving spouse for the purpose of meeting emergency needs not only of his surviving spouse, but also of his surviving son and brother. The words "any beneficiary" in paragraph IV(g) of the will include the surviving son and brother.

The son in paragraph II(f)(3) of the will is specifically referred to as a beneficiary. In paragraph IV(e) of the will specific reference is made to "income" beneficiaries. We believe that these provisions, taken together, make it clear that the reference in paragraph IV(g) to "any beneficiary" is not limited just to the current income beneficiary (namely, decedent's wife) but also includes decedent's son and brother.

In addition, we note the severely disabled condition of decedent's son that makes it unlikely decedent would have intended to prohibit the trustee from invading the corpus of the large testamentary trust to meet emergency needs of his son. Vague and unsubstantiated testimony concerning medical insurance decedent had purchased for his son does not alter our conclusion in this regard.

Cases interpreting testamentary language that are relied on by petitioner are distinguishable. In *Parasson v. United*

*States,* an unreported case (N.D. Ohio 1987, 87-1 USTC par. 13,708), the reference to any beneficiary in the contested portion of the will clearly referred only to a current income beneficiary. In *In re Hruska's Guardianship,* 230 Iowa 668, 298 N.W. 664 (1941), the trust fund in question was not the product of a testamentary trust but resulted from a probate settlement among the beneficiaries. In *Lenzer v. Faulk,* 68 N.Y.S.2d 699 (N.Y. County Sup. Ct. 1947), certain pronouns used in the will indicated that the language in dispute referred only to the current income beneficiary. In *Matter of Campbell's Trusts,* 258 N.W.2d 856 (Minn. 1977), the language in dispute clearly referred only to the current income beneficiaries. *Smith v. Bank of Clearwater,* 479 So.2d 755 (Fla. Dist. Ct. App., 1985), involved a statute of limitations question, and the court therein did not interpret language concerning a power of invasion on behalf of trust beneficiaries. We regard that case as having limited applicability to the question of will construction involved herein.

Petitioner argues alternatively that the trustee's power to invade trust corpus to meet emergency needs of decedent's son and brother is a "special power" that, under Georgia law, could not be exercised by a successor trustee. Petitioner therefore concludes that the power to invade trust corpus was eliminated upon Mr. Mifflin's renunciation of his designation as trustee and that no portion of the trust property thereafter could have been appointed by the successor trustee to any beneficiary other than the surviving spouse.

Whether a power is special to a particular individual trustee or whether a power is general to any trustee depends on the intent of the decedent. *Gilmore v. Gilmore,* 201 Ga. 770, 41 S.E.2d 229, 233 (1947). Decedent's will, paragraph IV(g), gives the power to invade to "the trustee named herein." Such a general reference is not particularly helpful in deciding whether a trustee's power was intended to be special or general. G. Bogert, Trusts and Trustees, sec. 553, p. 78 (2d ed. 1980). More useful in determining whether a particular power was intended to be personal to a named individual trustee is a consideration of the purpose of the settlor and the effect upon the realization of that

purpose that a failure of the power would have. As explained in Bogert—

Thus if a settlor leaves property to his brother-in-law for the purpose of allowing a daughter the income she needs until she is 30, for the purpose of education and support, with a power to deliver principal to her if the trustee approves of her husband's moral character, the fundamental object of the settlor is to provide the necessities and comforts of life to his daughter during her early life. This underlying purpose might be defeated if the power to pay over principal were held to cease on the death, resignation, or removal of the original trustee. Hence, in order to insure the accomplishment of the settlor's objects to the full, a court may well be inclined to find the power to be attached to the office and to pass to a successor trustee. [Fn. ref. omitted. Bogert, *supra*, sec. 553, at 83-84.]

From the will and in light of decedent's son's medical condition, we cannot conclude that the trustee's power to invade trust corpus, as reflected in paragraph IV(g) of the will, reflected such a minor or insignificant objective of the decedent that it was rendered inoperative by the renunciation by the named trustee.

Petitioner relies on *Gilmore v. Gilmore, supra,* and *Marsh v. Anderson,* 107 S.E.2d 188 (Ga. 1959), in support of his argument that the power to invade trust corpus that was given to Mr. Mifflin was a special power and was not intended to be available to a successor trustee. In those cases, however, the pertinent language of the will indicated an intention to rely on the particular discretion and judgment of the named trustees. In the instant case there is no such language. Further, the executor acknowledged at trial that he and decedent did not discuss what would happen to the trustee's power to invade trust corpus if Mr. Mifflin refused to serve as trustee. Thus, no credible parol evidence is available to assist in the resolution of this issue.

We conclude that the power to invade corpus granted in paragraph IV(g) of decedent's testamentary trust (exercisable in favor of decedent's surviving spouse, son, and brother) was not a special power but was a general power available to the trustee who succeeded Mr. Mifflin.

For the reasons explained, we hold that the interest passing to decedent's surviving spouse was not a qualifying income or annuity interest under sections 2056(b)(7)(B) or (C).

*Decision will be entered under Rule 155.*