ESTATE OF WILLARD E. ROBERTSON, DECEASED,
TOM STOCKLAND, SUCCESSOR-EXECUTOR,
PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 39144-87.     Filed June 29, 1992.

*E.J. Ball, Kenneth R. Mourton,* and *Stephen Erwin Adams,*
for petitioner.
*Edsel Ford Holman, Jr.,* for respondent.

OPINION

PARKER, *Judge:* This matter is before the Court on respon-
dent's motion for partial summary judgment, filed December
23, 1991.

Unless otherwise indicated, all section references are to the
Internal Revenue Code in effect as of the date of the decedent's
death, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined a deficiency of $14,014,749.30 in
petitioner's Federal estate tax. The issue is whether the
surviving spouse's income interest in the Marlin Robertson
Trust-2 and Trust-3 property constitutes "qualified terminable
interest property" within the meaning of section 2056(b)(7)
where that income interest is subject to an election to be made
by the executor in his discretion.[1] Specifically, the issue is

---

[1]The issue that is the subject of the instant motion for partial summary judgment accounts for
about half of the deficiency amount. Other issues remaining for decision in this case are: (1) The

whether petitioner is entitled to a marital deduction with respect to this property. Secs. 2056(a), (b)(1), (b)(7).

Willard E. Robertson (the decedent) died on October 29, 1983, and on the date of his death, was a resident of Benton County, Arkansas. On November 2, 1983, the decedent's last will and testament was probated and his son, Willard E. Robertson, Jr. (Robbie), was authorized to act as executor for the decedent's estate.

On April 11, 1984, Marlin Head Robertson (the surviving spouse) filed a petition for removal of executor, which litigation was resolved by an agreement filed with the Probate Court on August 1, 1984. On that same day, the Probate Court issued an order that authorized the surviving spouse to act with Robbie as coexecutor of the decedent's estate.[2]

On September 28, 1984, the surviving spouse and Robbie, as coexecutors, filed a U.S. Estate Tax Return, Form 706, for the estate, which is petitioner herein. That estate tax return reported a gross estate valued at $31,531,399.11, including a valuation of the decedent's interest in the Willard E. Robertson Corp. of $29,363,860.[3] Certain life insurance payable to the surviving spouse and property passing directly to the surviving spouse totaling $1,249,246.95, plus $8,829,813.56 set aside for a section 2056(b)(5) "power of appointment" marital trust, resulted in a partial marital deduction of $10,079,060.51. The estate tax return also reflected a marital deduction for two residuary marital trusts in which the surviving spouse was

---

amount of decrease in the value of the decedent's interest in the Willard E. Robertson Corp. related to the claim of the decedent's first wife; (2) whether a claim filed by the original executor's corporation qualifies as a valid debt of the estate; (3) whether the gross estate should be increased by the amount of a bonus allegedly owed to the decedent at his date of death by the Willard E. Robertson Corp.; (4) whether the gross estate should be increased by personal property located in a Shreveport, Louisiana, house owned by the decedent; (5) whether the estate's adjusted taxable gifts figure includes gifts of interest with respect to interest-free loans made by the decedent; and (6) whether the estate is entitled to deductions for professional fees that it claims have been incurred in the course of estate administration.

[2]On Oct. 13, 1989, the Probate Court on its own motion appointed Dr. Phillip Taylor as successor-executor for the decedent's estate, thereby replacing both Willard E. Robertson, Jr. (Robbie) and the surviving spouse. On January 11, 1991, the Probate Court again on its own motion appointed Tom Stockland as successor-executor, thereby replacing Dr. Phillip Taylor.

[3]Petitioner now argues that that value was erroneous, that a large portion of the assets of the estate were later determined to be community property belonging to the decedent's ex-wife, and that the value of the stock of the Willard E. Robertson Corp. was overstated. These factual disputes remain to be resolved in subsequent proceedings. However, a substantial portion of the estate tax deficiency turns on the marital deduction issue, which is the subject of the instant motion for partial summary judgment.

allowed only an income interest under the terms of the decedent's will. These two residuary marital trusts (to be more fully discussed below as the Marlin Robertson Trust-2 and the Marlin Robertson Trust-3) were reported with a value of $8,829,813.56 each. On the estate tax return, the coexecutors made the election under section 2056(b)(7)(B)(v) in regard to these two trusts. The total marital deduction claimed on that estate tax return was $27,738,687.63, which together with other deductions resulted in estate tax due of zero.

On September 18, 1987, respondent issued a statutory notice of deficiency to petitioner, determining an estate tax deficiency of $14,014,749.30. The principal adjustment was the disallowance of $22,417,820.71 of the marital deduction due to litigation against the estate by the decedent's first wife and his children of that marriage. A timely petition was filed in the Tax Court. Trial of the case was continued because of the pending litigation by the first wife and the children of that marriage. After that litigation was settled, respondent determined that the two residuary marital trusts did not meet the qualifications for "qualified terminable interest property" (QTIP). Respondent moved for leave to file an amended answer to raise that issue which the Court allowed on May 2, 1990. The trial of the case was subsequently again continued because of these new issues and certain delays in obtaining appraisals of various properties. Pretrial preparations in regard to these valuation issues and other issues are still ongoing. See *supra* notes 1, 3.

*Terms of the Will*

In his last will and testament, the decedent made certain specific bequests. The decedent bequeathed all of his personal effects to his wife and specific amounts of money to his son, Phillip Scott Robertson, to his daughter, Patricia Anne Miller, and to his brother, Leonard Robertson.

Article IX of the decedent's will addressed the disposition of the residue of his estate. In paragraph 1(a) of Article IX, the decedent directed that, if his wife survived him, his residuary estate be divided into four separate parts. The first part, designated as the "Willard Robertson Trust" was to be funded by an amount of property "equal in value to the largest amount which, after allowing for the unified credit which has

not been claimed for transfers made during my life, and any other allowable credits, will result in no federal estate taxes being imposed upon my estate." The Willard Robertson Trust was for the sole benefit of the decedent's sons of his second marriage, Willard E. Robertson, Jr. (Robbie), and James Christopher Robertson (Chris). The surviving spouse was given no interest in the Willard Robertson Trust.

The rest of the residue of the decedent's estate was to be divided into three equal trusts, designated as the Marlin Robertson Trust-1 (trust M-1), the Marlin Robertson Trust-2 (trust M-2), and the Marlin Robertson Trust-3 (trust M-3). Trust M-1 qualified for the marital deduction under section 2056(b)(5) because the surviving spouse was given a testamentary power of appointment over the assets of that trust. Paragraphs 3(a) and 3(c) of Article IX of the will provided that:

(a) The Trustee shall pay all of the net income of the MARLIN ROBERTSON TRUSTS to my wife in convenient installments at least as often as quarter-annually during her life.

\* \* \* \* \* \* \*

(c) \* \* \* To the extent that my wife does not effectively exercise her power of appointment, the MARLIN ROBERTSON TRUST-1 shall upon the death of my wife be added to and commingled with the WILLARD ROBERTSON TRUST and held, or distributed in whole or in part, as if it had been an original part of the WILLARD ROBERTSON TRUST.

As indicated in paragraph 3(a), the surviving spouse also was to receive all of the net income of trusts M-2 and M-3. However, if the executor failed or refused to make the QTIP election on the estate tax return, the assets of trusts M-2 and M-3 were to be transferred to the Willard Robertson Trust. Specifically, paragraphs 3(d), 4, and 5 of Article IX of the will provided as follows:

(d) I hereby authorize my executor, in his sole discretion, to elect that any part or all of any amount of property passing under this Article to the MARLIN ROBERTSON TRUST-2 and/or the MARLIN ROBERTSON TRUST-3 be treated as qualified terminable interest property for the purposes of qualifying for the marital deduction allowable in determining the federal estate tax upon my estate. Without limiting the discretion contained in the foregoing sentence, it is my expectation that my executor will make said election with respect to all of any such amount unless the timing of my wife's death and mine and the computation of the combined death duties in our two (2) estate (sic) render such an election inappropriate. To the extent that my executor does not effectively exercise the power of election granted hereunder, then such portion of the MARLIN ROBERTSON TRUST-2 and/or MARLIN

ROBERTSON TRUST-3 shall be added to and commingled with the WIL-LARD ROBERTSON TRUST and held, or distributed in whole or in part, as if it had been an original part of the WILLARD ROBERTSON TRUST.

4. Upon the death of my wife after my death, the Trustee shall divide the MARLIN ROBERTSON TRUST-2 and the MARLIN ROBERTSON TRUST-3, as then constituted, or if my wife does not survive me, the Trustee shall distribute the MARLIN ROBERTSON TRUST-2 and the MARLIN ROBERT-SON TRUST-3 to the WILLARD ROBERTSON TRUST to be added to and commingled with the WILLARD ROBERTSON TRUST and held, or partly held and partly distributed, as if it had been an original part of the WILLARD ROBERTSON TRUST.

5. If there is not sufficient evidence that my wife and I died otherwise than simultaneously or should we die as the result of a common disaster, she shall be considered to have survived me for all purposes of this article.

## Positions of the Parties

Respondent's general position regarding the marital deduction is that, on the date of the decedent's death, the surviving spouse's interest in two of the three residuary marital trusts was subject to a contingency that could have caused such interest to terminate or fail. Respondent argues that the failure of the executor to elect QTIP treatment would defeat the surviving spouse's interest in trusts M-2 and M-3. Specifically, respondent says that, because the surviving spouse's rights were contingent on the executor's making the QTIP election, her rights did not ."pass" from the decedent as required by section 2056(b)(7)(B)(i)(I). Respondent also says that the surviving spouse does not have a "qualifying income interest for life" within the meaning of section 2056(b)(7)(B)(i)(II). Such an income interest requires that she be entitled to all income from the property and that "no person has a power to appoint any part of the property to any person other than the surviving spouse." Sec. 2056(b)(7)(B)(ii)(I) and (II). Respondent argues that, because the surviving spouse's rights were contingent on the executor's making the QTIP election, the executor could prevent the transfer of the property interest to the surviving spouse or divest her of her interest, and thus had a power to appoint the income interest to someone other than the surviving spouse.

Petitioner argues that, under the terms and intent of the decedent's will and under the laws of the State of Arkansas that govern fiduciaries, the executor "had no authority * * * not to elect QTIP treatment for Marital Trusts 2 and 3 as of the

date of the decedent's death without the consent of the surviving spouse". Petitioner argues that the will is ambiguous and seeks an opportunity to present extrinsic evidence in the form of testimony of the scrivener of the will (the lawyer who drafted the will) to determine the decedent's intent. Petitioner asserts that "the decedent never intended for the Executor to have any authority not to elect QTIP treatment for Marital Trusts 2 and 3 without the consent of the decedent's spouse if the decedent's spouse survived him".

*Motion for Partial Summary Judgment*

Respondent has moved for partial summary judgment under Rule 121. Under Rule 121(b), a motion for summary judgment is granted when it is shown "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(a) provides that either party can move for summary judgment in its favor on all or part of the issues in controversy. The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Jacklin v. Commissioner,* 79 T.C. 340, 344 (1982); *Espinoza v. Commissioner,* 78 T.C. 412, 416 (1982). In considering a motion for summary judgment, we construe the facts in a manner most favorable to the party opposing the motion. *Naftel v. Commissioner,* 85 T.C. 527, 529 (1985); see generally *Callahan v. Commissioner,* 98 T.C. 276 (1992).

Respondent contends that the surviving spouse's interest in trusts M-2 and M-3 does not constitute "qualified terminable interest property" (QTIP property) within the meaning of section 2056(b)(7) because the passage of an interest in the trusts to the surviving spouse was contingent upon the executor's making a QTIP election. Thus, respondent asserts that there is no issue of material fact herein, that the surviving spouse's interest does not qualify as a QTIP, and that the "marital deduction" provided under section 2056(a) with respect to the property should be denied as a matter of law.

*Pertinent Code Provisions and Precedents*

Section 2056(a) allows a marital deduction from a decedent's gross estate for the value of property interests passing from the decedent to a surviving spouse. However, a marital

deduction is denied for a "terminable interest", that is, a property interest that will terminate or fail "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur". Sec. 2056(b)(1). Thus, an interest in the nature of a life estate is ineligible for the marital deduction. *Estate of Nicholson v. Commissioner,* 94 T.C. 666, 671 (1990); *Estate of Higgins v. Commissioner,* 91 T.C. 61, 66 (1988), affd. 897 F.2d 856 (6th Cir. 1990).

However, the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, sec. 403(d), 95 Stat. 172, 302, added section 2056(b)(7), which allows a marital deduction for "qualified terminable interest property". This section allows a decedent to pass to the surviving spouse an interest in property for the spouse's lifetime without losing the ability to control the disposition of that property upon the death of the surviving spouse.

Section 2056(b)(7)(B)(i) defines "qualified terminable interest property" as property (1) which passes from the decedent, (2) in which the surviving spouse has a "qualifying income interest for life", and (3) for which an election has been made.[4] A "qualifying income interest for life" is defined as:

(ii) QUALIFYING INCOME INTEREST FOR LIFE.—The surviving spouse has a qualifying income interest for life if—

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, * * * and

(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.
[Sec. 2056(b)(7)(B)(ii).]

Thus, if a surviving spouse has a "qualifying income interest for life" within the meaning of section 2056(b)(7)(B)(ii), that interest is not treated as a terminable interest under section 2056(b)(1). The entire property, the life interest and the remainder, would be treated as passing to the surviving spouse and would qualify for the estate tax marital deduction. *Estate of Clayton v. Commissioner,* 97 T.C. 327 (1991); *Estate of Kyle v. Commissioner,* 94 T.C. 829, 839 (1990); H. Rept. 97-201 (1981), 1981-2 C.B. 352, 377-379.

---

[4] Sec. 2056(b)(7)(B)(v) provides that "An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable."

Whether an interest in property qualifies for the marital deduction must be determined as of the date of the decedent's death. *Jackson v. United States,* 376 U.S. 503, 507-508 (1964). Whether a surviving spouse received a "qualifying income interest for life" must also be determined as of the date of the decedent's death. *Estate of Nicholson v. Commissioner,* 94 T.C. at 675. In making this determination, we apply the principle that it is "the possibility, not the probability, that an interest will terminate or fail" that determines whether or not a surviving spouse's interest is a "qualifying income interest for life". *Estate of Clayton v. Commissioner,* 97 T.C. at 334 (quoting *Estate of Kyle v. Commissioner,* 94 T.C. at 845); see also *Estate of Weisberger v. Commissioner,* 29 T.C. 217, 220-223 (1957).

*Application to the Facts of This Case*

In this case, we must decide whether Mrs. Robertson, the surviving spouse, had a "qualifying income interest for life" in the property of trusts M-2 and M-3. Paragraph 3(a) of Article IX of the will gave Mrs. Robertson the net income for life in all three of the marital trusts. Paragraph 3(d) gave the executor the discretion to make the QTIP election as to any part or all of the property passing to trust M-2 and trust M-3. Paragraph 3(d) of the decedent's will expressly provided that—

I hereby authorize my executor, in his sole discretion, to elect that any part or all of any amount of property passing under this Article to the MARLIN ROBERTSON TRUST-2 and/or the MARLIN ROBERTSON TRUST-3 be treated as qualified terminable interest property for the purposes of qualifying for the marital deduction allowable in determining the federal estate tax upon my estate.

Up to that point in the will, the surviving spouse has a net income interest for life whether the executor makes the QTIP election or fails to make such election. In other words, if the executor failed to make the election, that would not affect the property interest devised or bequeathed to the surviving spouse although it would affect the tax consequences to the estate. However, the final sentence of paragraph 3(d) of the will further provided that—

To the extent that my executor does not effectively exercise the power of election granted hereunder, then such portion of the MARLIN ROBERTSON TRUST-2 and/or MARLIN ROBERTSON TRUST-3 shall be added to and

commingled with the WILLARD ROBERTSON TRUST and held, or distributed in whole or in part, as if it had been an original part of the WILLARD ROBERTSON TRUST.

That creates the possibility that the property in trust M-2 and trust M-3 could be transferred to the Willard Robertson Trust in which the surviving spouse had no interest. Thus, there is the possibility that either the property of trust M-2 or trust M-3 would never pass from the decedent to the surviving spouse or that, if it had passed to her, she could be divested of her income interest in that property.[5] Thus, in this case, as in *Estate of Clayton v. Commissioner, supra,* there was, at the time of the decedent's death, a possibility that the surviving spouse's income interest could terminate or fail, or that she could be divested of her income interest.

The reasoning of *Estate of Clayton v. Commissioner,* 97 T.C. 327 (1991), is equally applicable to and controlling in this case. The facts of that case are quite similar to the facts of the case at hand. In his will, Mr. Clayton created two trusts for the benefit of his wife during her life. The corpus of the first trust (trust A) consisted of the portion of the estate that was equal in value to the amount in effect exempted from Federal estate tax by application of the Federal estate and gift tax unified credit, and that was given to the trustees for the benefit of Mrs. Clayton during her life. The remainder of trust A was for the benefit of the decedent's children who were living at the date of Mrs. Clayton's death. The second trust (trust B) consisted of the residue of the decedent's estate, which was given to the trustees of trust B for the benefit of Mrs. Clayton during her life. Under trust B Mrs. Clayton was entitled to the full net income each year for life.[6] Upon her death, the remainder of trust B was to be added to and become a part of the corpus of trust A for the use and benefit of the decedent's then living children. With respect to trust B, the will provided that, if his executors failed or refused to make the QTIP election, then the

---

[5]We note that this final sentence of paragraph 3(d) does not say that the trust M-2 and M-3 property will be added to the Willard Robertson Trust "upon the death of my wife". Compare the language in paragraph 3(c) of Article IX in regard to trust M-1, the "power of appointment" marital trust.

[6]Under the other trusts, the trustees were authorized in their discretion to distribute the current income in such amounts as the trustees deemed necessary for the maintenance, health, education, and medical care of the beneficiary.

trust B property was to "pass to and become a part of the corpus" of trust A for the benefit of the trust A beneficiaries.

We concluded in *Estate of Clayton v. Commissioner, supra* that the executor of the decedent's estate (by virtue of the right to make the QTIP election) possessed the ability to control and to direct the assets of trust B to trust A or to trust B. We further concluded that:

> The effect of the executor's ability to control and to direct the assets in both trusts was that the possibility existed, as of the date of decedent's death, that Mrs. Clayton would be divested of all or a part of her interest in trust B. This control over the trust assets is tantamount to a power to appoint property that was subject to the qualifying income interest.
>
> Moreover, because of the executor's power to control and to direct the assets, the possibility existed that Mrs. Clayton would not be "entitled to all the income from the property" within the meaning of section 2056(b)(7)-(B)(ii)(I). Mrs. Clayton's income interest in trust B would terminate or fail in the event that the executor did not or could not make the required election. The failure to grant Mrs. Clayton an income interest in trust B without regard to whether the applicable election was made disregards the requirement that the surviving spouse must be entitled for a period measured solely by the spouse's life to all of the income from the property.
>
> [*Estate of Clayton v. Commissioner,* 97 T.C. at 336.]

As a result, Mrs. Clayton's interest in trust B was not a "qualifying income interest for life". Therefore, we concluded that her interest in trust B was not a qualified terminable interest and that the decedent's estate was not entitled to an estate tax marital deduction for Mrs. Clayton's interest in the trust B property with respect to which a QTIP election had been made. *Estate of Clayton v. Commissioner, supra* at 336.

We reach the same conclusion in this case. The executor of the decedent's estate possessed the ability to control and to direct the assets in trusts M-2 and M-3 by virtue of the right to make or not to make the QTIP election. The executor's ability to control and to direct the trusts' assets created the possibility as of the date of the decedent's death that Mrs. Robertson would be divested of all or a part of her interest in trusts M-2 and M-3 because those trusts' assets would be added to and commingled with the Willard Robertson Trust "as if it had been an original part of the WILLARD ROBERTSON TRUST." Thus, because there exists this contingency, Mrs. Robertson's rights did not "pass" from the decedent as required by section 2056(b)(7)(B)(i)(I). In addition, as we held in *Estate*

*of Clayton,* the executor's ability to control the trusts' assets is tantamount to a power to appoint property and to appoint that property to someone other than the surviving spouse, which does not meet the requirements of section 2056(b)(7)(B)(ii)(II). *Estate of Clayton v. Commissioner,* 97 T.C. at 336; see also *Estate of Bowling v. Commissioner,* 93 T.C. 286 (1989); *Estate of Higgins v. Commissioner,* 91 T.C. 61 (1988), affd. 897 F.2d 856 (6th Cir. 1990).

Furthermore, the executor's power over the assets of trusts M-2 and M-3 created the possibility that Mrs. Robertson would not be "entitled to all the income from the property" within the meaning of section 2056(b)(7)(B)(ii)(I). If the executor did not make the QTIP election, Mrs. Robertson's income interest in trusts M-2 and M-3 would terminate or fail. To satisfy section 2056(b)(7)(B)(ii)(I), a surviving spouse must be entitled for a period, measured solely by the spouse's life, to all of the income from the trust property. As this Court made clear in *Estate of Clayton v. Commissioner,* 97 T.C. at 337:

Whether the surviving spouse has an income interest for life in the property is independent of, and not dependent upon, the requirement that an election be made with respect to that property. If the surviving spouse does not have an income interest for life in the trust, then the election to treat the trust as a QTIP trust is ineffective.

* * * Thus, the election determines the tax treatment of the interest that was devised or bequeathed to the surviving spouse; the election does not, however, determine the nature of the interest that is granted to the surviving spouse.

Here, the decedent's will failed to grant Mrs. Robertson any qualifying income interest for life separate and apart from the interest that would arise *if* the executor made the QTIP election. Thus, as of the date of the decedent's death, Mrs. Robertson's income interest in the trusts was subject to the executor's right to elect QTIP treatment and was not independently payable to Mrs. Robertson if the executor failed to make the election.

Therefore, based upon the terms of the will as a whole and the applicable precedents, we conclude that Mrs. Robertson's interest in trusts M-2 and M-3 is not a "qualifying income interest for life", and the trusts' property does not satisfy the requirements for qualified terminable interest property under section 2056(b)(7)(B). Accordingly, the decedent's estate is not

entitled to an estate tax marital deduction for the trust M-2 and trust M-3 property.

Petitioner argues against such a result and advances two reasons that, it says, render a partial summary judgment ruling inappropriate in this case. First, petitioner asserts that there are ambiguities in the decedent's will with respect to the testator's intent regarding the surviving spouse's interest in the trusts and the executor's discretion in making the QTIP election. Second, petitioner asserts that, under Arkansas fiduciary law, the executor of the decedent's will was obligated to obtain the consent of the surviving spouse before the authority not to elect QTIP property status existed, both because that was the testator's intent and because the fiduciary duties of the executor would not allow him to appoint property for his own benefit to the detriment of the surviving spouse without her consent.

First, petitioner contends that extrinsic evidence, in the form of the scrivener's testimony, must be considered to determine the decedent's intent with regard to the QTIP election. Petitioner would have us think that the decedent never intended for the executor to have any authority *not to elect* QTIP treatment for trust M-2 or trust M-3 without the consent of the decedent's spouse if his spouse survived him. Petitioner further asserts that paragraphs 1(c),[7] 3(d), and 4 of Article IX of decedent's will contain ambiguities that require extrinsic evidence at trial to determine their exact meaning and the decedent's intent with respect to the QTIP election for trusts M-2 and M-3.

The parties agree that the will must be construed according to the laws of the State of Arkansas. It is generally accepted that the determination of the nature of any property interest that passes to a surviving spouse will be made under the law of the jurisdiction under which the interest passes. See *Estate of Doherty v. Commissioner,* 95 T.C. 446, 460 (1990); *Estate of Nicholson v. Commissioner,* 94 T.C. 666, 672-673 (1990); *Estate of Bowling v. Commissioner,* 93 T.C. 286, 293 (1989).

---

[7]Paragraph 1(c) contains precatory words advising the surviving spouse to make use of the disclaimer of property and her powers with respect to trusts M-2 and M-3 to reduce the estate tax burden on their combined estates. That provision is not helpful in determining whether the requirements of sec. 2056(b)(7) have been satisfied.

It is also generally accepted in the State of Arkansas that a court should not look beyond the clear meaning of testamentary language to determine a testator's intent. "One such rule is that where the language of a will is clear there is no necessity for trying to arrive at any intention other than that expressed by its language." *Crittenden v. Lytle,* 253 S.W.2d 361, 363 (Ark. 1952). Arkansas law also makes it clear that:

[1] The function of a court in dealing with a will is purely judicial; and its sole duty and its only power in the premises is to construe and enforce the will, not to make for the testator another will which might appear to the court more equitable or more in accordance with what the court might believe to have been the testator's unexpressed intentions. "* * * but that intention is not that which existed in the mind of the testator, but that which is expressed by the language of the will." [Citation omitted.]

[2] Before the necessity for judicial interpretation of a will may arise there must be found in the language of the will an ambiguity or uncertainty; and where no such ambiguity or uncertainty is found, there is no need for the application by the court of any of the rules for construction. * * *

[*Park v. Holloman,* 195 S.W.2d 546, 547 (Ark. 1946).]

This Court has stated that "In any event, decedent's will must be applied as written and not as it might have been written." *Estate of Clayton v. Commissioner,* 97 T.C. at 338.

Arkansas law requires that we interpret the decedent's will within the four corners of the document itself, considering the language used and giving meaning to all of its provisions, without reference to extrinsic evidence. *In re Estate of Conover,* 801 S.W.2d 299, 301 (Ark. 1990); *Armstrong v. Butler,* 553 S.W.2d 453 (Ark. 1977). Only when there is uncertainty as to the testator's intentions from looking at the language used in the will may the court read the language employed by the testator in light of the circumstances existing when the will was written. *Martin v. Simmons First National Bank,* 467 S.W.2d 165 (Ark. 1971). Oral testimony is admissible only for the purpose of showing the meaning of the words used in the will when they are ambiguous, and not to show what the testator intended, as distinguished from his express words. *Armstrong v. Butler, supra* at 457.

We disagree with petitioner's contention that the decedent's will is ambiguous.[8] We grant that the decedent may not have

---

[8]The proffered affidavit of the attorney who drafted the will does not address any ambiguity in the words used in the will, but some broad, general intention of the decedent that is not expressed in the words of the will.

intended the tax result that flows from the terms of his will; nevertheless, the language of his will clearly mandates this outcome. The language of paragraphs 1(c), 3(d), and 4 of Article IX of the decedent's will, considered as a whole, is not ambiguous. See *supra* note 8. In paragraph 3(d) of Article IX, the decedent states, not once but twice, that the executor is allowed to make the QTIP election in his discretion. To say that this means that he did not have any authority *not to elect* is to ignore the express words in the will. A reasonable reading of this unambiguous language is that if the QTIP election is rejected by the executor, in his sole discretion, the property is to be diverted from the surviving spouse into the nonmarital trust as if that property originally had passed to the Willard Robertson Trust at the date of the decedent's death.[9]

Petitioner also argues that Arkansas fiduciary law would not have allowed the decedent's executor not to have made the election without Mrs. Robertson's consent. Petitioner states that, as a result of being a fiduciary, an executor owes a duty of undivided loyalty to the beneficiaries of an estate. Petitioner agrees that Arkansas fiduciary law is silent on the fiduciary issues presented in this case, but argues that under basic fiduciary common-law principles, an Arkansas executor must refrain from acting in his own interest unless the decedent has authorized such self-dealing explicitly or unless the executor has made full disclosure to and received permission from the affected beneficiaries.

In this case, the decedent's will provided that assets not elected for QTIP treatment would be added to the Willard Robertson Trust, of which Robbie and Chris were beneficiaries.

---

[9]Some of petitioner's own arguments are based on this same reading. In its initial response to respondent's motion, petitioner argued:

21. Until the property has been qualified pursuant to the election, a power to appoint the property should have no effect on whether or not there will be a qualifying income interest for life once the election is made.

22. Once a QTIP election has been made, there is no longer any power to appoint the property and the income interest in the property would constitute a qualifying interest for life.

In the accompanying memorandum, petitioner argues "There is no reasonable distinction between a power of appointment held by the decedent over the property and one given to the executor only up to the making of the QTIP election." We agree with petitioner that the decedent's will gave the executor in his capacity as executor what amounts to a power of appointment over the property in trust M-2 and trust M-3; we do not agree with petitioner as to the legal effect of that grant of a power of appointment.

Petitioner asserts that Robbie, as executor, was required by law to elect to qualify trust M-2 and trust M-3 as QTIP's because failure to do so would have been a breach of the duty of undivided loyalty that Robbie owed to the surviving spouse since assets would be diverted to his benefit. The right to elect or not to elect QTIP treatment was given to the executor in his capacity as executor. The fact that the executor happened to be the decedent's son and a beneficiary of the Willard Robertson Trust is irrelevant. In *Estate of Clayton v. Commissioner, supra,* Mrs. Clayton was serving as the sole executor at the time the election was made, and she possessed the proscribed power of appointment in her capacity as executor, not in her individual capacity. The fact that she was also the surviving spouse was irrelevant.

Moreover, as mentioned in the earlier analysis of the terms of Mr. Robertson's will, the problem is not who had the right to make the QTIP election; the problem is what happens to Mrs. Robertson's income interest if that election is not made. That decision was not to be made by the executor; that decision was made by the decedent himself in his will—he directed that if the election was not made, the property in trust M-2 and trust M-3 was to be added to the Willard Robertson Trust. The decedent could have chosen to give his surviving spouse an outright income interest in those trusts for life, separate from and independent of the QTIP election, but he did not do so.

Petitioner further contends that executor discretion, despite the will's explicit language, also did not exist in any other possible executor since the executor of the estate is under the affirmative duty to the beneficiaries in administering the estate to exercise ordinary prudence and care. Petitioner states that, due to the fact that the "overwhelming bulk of the decedent's estate at the time of his death consisted of highly illiquid assets", the fiduciary duty of care and skill required the executor, whether interested or independent, to elect QTIP property treatment for trusts M-2 and M-3. Petitioner cites basic fiduciary common-law principles to show the duties an executor owes a beneficiary. However, nothing petitioner has cited prevents the executor from exercising the discretion the decedent gave him. The decedent could have limited the non-election of QTIP treatment to specific circumstances, but he did

not. At most, the decedent's statement that "Without limiting the discretion contained in the foregoing sentence, it is my expectation that my executor will make said election with respect to all of any such amount unless the timing of my wife's death and mine and the computation of the combined death duties in our two (2) estate (sic) render such an election inappropriate" is an indication that he intended that the executor lower estate taxes through the QTIP election; the clause, however, explicitly states that it does not limit the executor's discretion.

The decedent directed the executor to use his discretion. The decedent contemplated the possibility that the executor might choose not to make the QTIP election, since the decedent included specific directions as to what was to occur in that event, namely, that the property of trust M-2 and trust M-3 would immediately be added to the Willard Robertson Trust. This amounted to the grant of a power of appointment that created the possibility that the surviving spouse's income interest could terminate or fail.

Finally, we will address petitioner's reliance upon *Estate of Smith v. Commissioner,* 66 T.C. 415 (1976), affd. 565 F.2d 455 (7th Cir. 1977), to support its position. That case involves an analysis of section 2056(b)(5) property and was decided prior to the enactment of section 2056(b)(7); however, *Estate of Smith* raises similar questions and issues as the case in hand and warrants discussion. In that case, decedent Charles Smith died with a revocable trust that was to be divided at his death into a residual portion and a marital portion. The marital portion was to contain sufficient assets to equalize Mr. Smith's Federal taxable estate with that of his wife. This equalization was to occur by creating a fiction that his wife died immediately after Mr. Smith and by valuing her estate on the date used to value Mr. Smith's taxable estate. The surviving spouse was given a lifetime income right in, and an unlimited testamentary general power of appointment over, the marital portion. The portion of the revocable trust corpus that was to be allocated to the marital portion was to be determined by the trustee of the revocable trust pursuant to a prescribed formula. Respondent determined that the interest of the wife in the marital portion was a nondeductible terminable interest because the interest was contingent on information discoverable after Mr. Smith's death.

This Court concluded in *Estate of Smith v. Commissioner, supra,* that the wife's marital portion interest did qualify for the marital deduction under section 2056(b)(5). We specifically noted that:

The interest in property that passed from decedent to his surviving spouse as a result of decedent's death under the terms of the trust was the right to receive all the income produced by the marital trust during her lifetime and a general power to appoint the entire corpus of the marital trust at her death. * * * [*Estate of Smith v. Commissioner, supra* at 427.]

In *Estate of Smith,* we concluded that respondent confused the terminable interest rule and the determination of the value of the property interest passing to the surviving spouse. In analyzing *Estate of Smith v. Commissioner, supra* at 428, we stated that:

In our opinion an interest is not terminable under the rule simply because the value or quantity thereof cannot be determined as of the date of decedent's death. * * * Rather, we think the terminable interest rule applies when the indefeasible quality or character of the surviving spouse's interest cannot be determined as of the decedent's death.

We noted that Mrs. Smith had a contingent interest in the trust which, at her husband's death, became vested and indefeasible. Although the value of the interest in property that comprised the marital portion of the trust remained to be determined, there was no subsequent event that would have divested Mrs. Smith of her interest in the trust. We reasoned that the option to value the surviving spouse's estate on an alternative valuation date would affect the *value* of the interest that passed from the decedent to his surviving spouse rather than its *character. Estate of Smith v. Commissioner,* 66 T.C. at 430. In addition, the trustee's obligation under the terms of the trust was fixed, and it had no discretion: it was directed to allocate to the marital trust a percentage interest in assets that would result in the most tax advantageous estate tax position for both estates.

That is not the type of situation that is present in the instant case. Mrs. Robertson did not have a contingent interest in trust M-2 and/or trust M-3 that became vested and indefeasible at the time of the decedent's death. She was not granted a lifetime income interest in the trusts' property independent of the condition that the executor of the dece-

dent's will make a QTIP election. This case does not involve a mere valuation problem. By the clear terms of the will, the executor, in his sole discretion, had to make the QTIP election regarding the trusts before Mrs. Robertson had a vested and indefeasible interest in the trusts. Stated another way, Mrs. Robertson's income interest in those trusts would terminate or fail, if the executor did not make the QTIP election, because in that event the property in those trusts would be added to the Willard Robertson Trust.

For all of the foregoing reasons, we hold that Mrs. Robertson does not have a "qualified income interest for life" in trusts M-2 and M-3, the trusts' property does not qualify as "qualified terminable interest property", and the decedent's estate is not entitled to an estate tax marital deduction for the trusts' property.

To reflect the foregoing,

*An order will be issued granting respondent's motion for partial summary judgment.*