38231. GRIFFITH v. FIRST NATIONAL BANK & TRUST COMPANY IN MACON et al.
38232. CUTLER et al. v. FIRST NATIONAL BANK & TRUST COMPANY IN MACON et al.
38233, 38234. FIRST NATIONAL BANK & TRUST COMPANY IN MACON et al. v. CUTLER et al. (two cases).

Jordan, Chief Justice.

This case brings into question the discretionary powers of a trustee with regard to charging two different trusts for encroachments made upon their corpus for the benefit of the beneficiary.

Arthur Griffith, Sr. was 85 years old when, on April 17, 1969, he executed a marital-deduction, inter-vivos trust agreement with the trustee-appellee First National Bank. This trust instrument created two trusts — (1) a marital deduction trust for the benefit of Mr. Griffith's wife (Trust A) and (2) a remainder trust for the benefit of Arthur Griffith, Jr., the appellant (Trust B).

Mr. Griffith died in 1970. The two trusts were funded partially by assets poured over by Mr. Griffith's will and partially by assets transferred through the trust agreement. Trust A received assets worth $99,500 and Trust B received assets worth $98,400. The trust provided that Mrs. Griffith should have all the income from the two trusts for her life, and that the trustee could encroach upon the corpus of either trust for Mrs. Griffith's benefit. In addition, it provided that Mrs. Griffith could exercise a general power of appointment over the property remaining in Trust A at her death, but that if she did not do so the property in Trust A should become a part of Trust B with the property from Trust B passing to Arthur Griffith, Jr.

Mrs. Griffith died in 1979. From 1970 to 1979 the trustee, First National, paid all the income from the two trusts to Mrs. Griffith; and it encroached upon the corpus of the two trusts in the amount of $116,000 for the benefit of Mrs. Griffith.

Mrs. Griffith passed the property of Trust A to her sons, the Cutler brothers, the appellees. First National decided to charge the corpus of Trust A $89,933 and the corpus of Trust B $26,667 for the encroachments. This left $10,167 to be distributed to the Cutlers and $71,733 to be distributed to Arthur Griffith, Jr. The Cutlers objected, contending that all of the encroachments should be charged to the residue of Trust B. First National petitioned the Bibb Superior Court for direction and for approval of its proposed billing. The trial court ruled that the trustee must charge the encroachments equally since there was no positive direction regarding the encroachments. Arthur Griffith, Jr., First National, and the Cutlers all appeal this ruling.

1. The main issue is whether the trial court erred in ruling that absent positive direction in the trust instrument as to which trust should bear the burden of the encroachments, the encroachments should be charged equally against the two trusts.

The following language from Trusts A and B authorized the encroachments:

Trust A — "The trustee is authorized to encroach on the principal of Trust A at any time and from time to time in such amounts as the Trustee may deem necessary, taking into consideration any other means of support which Trustee's wife may have to the knowledge of the Trustee, to provide for the support in reasonable comfort of the Trustee's wife."

Trust B — "The Trustee may, at any time and from time to time, encroach upon the corpus of Trust B for the support in reasonable comfort of and for the maintenance of the health of the Trustee's wife, the latter power to include the power to encroach to pay

medical, dental, hospital and nursing expenses and expenses of invalidism."

We first consider the grounds for reversal argued by the Cutlers. They contend that there is positive direction in the above encroachment clauses which, if followed, should have resulted in Trust B being exhausted before Trust A's corpus could have been reached.

First, they argue that the "other means of support" clause in Trust A, which is missing from Trust B, mandated that the trustee charge all encroachments against Trust B until its depletion before reaching Trust A. We disagree.

If the trust instrument involved in this case did not include the "other means of support clause," the trustee would be bound to consider only trust assets when considering the amount of corpus necessary to maintain the wife in the same standard of living to which she was accustomed while the trustee was alive. *Hamilton Nat. Bank v. Childers,* 233 Ga. 427 (211 SE2d 723) (1975). The "other means of support" clause expands the trustee's power. It authorizes the trustee to consider assets of the beneficiary apart from the trust. The Cutlers' argument is based on a belief that the "other means of support" clause limits the trustee's discretion so that he must not encroach upon the trust he is administering unless all the beneficiary's outside income is exhausted. We find this interpretation to be erroneous. As stated above, the "other means of support" language expands the trustee's discretion by enabling the trustee to consider the other means of support of the beneficiary when encroaching upon the trust assets.

Next, the Cutlers' also argue that the health care language in Trust B was a positive direction to the trustee to charge all health related encroachments to Trust B. Again, the Cutlers' have misconstrued this language. The obvious intent of Mr. Griffith, Sr., in erecting these two trusts was to provide for the "support in reasonable comfort of" Mrs. Griffith. Certainly, the "reasonable comfort" of Mrs. Griffith includes keeping her in good health. Consequently, First National could properly have encroached upon either trust for the health care of Mrs. Griffith. The health care language of Trust B merely lists a permitted purpose for which First National could properly encroach upon the trust for Mrs. Griffith.

As the Cutlers' grounds upon which they argue for reversal are without merit, we next consider the grounds for reversal argued by First National and Arthur Griffith, Jr.

They argue that the encroachment language gave to First National broad discretion in determining the size and frequency of encroachments against either trust. Consequently, they argue the

trustee had the power to charge the encroachments to either trust. We agree. In trust law, the cardinal rule is that the trustor-settlor's intention be followed. *Love v. Fulton Nat. Bank,* 213 Ga. 887, 891 (102 SE2d 488) (1958); *McVay v. Anderson,* 221 Ga. 381, 385 (144 SE2d 741) (1965). By giving First National the discretion (1) to encroach upon either trust for Mrs. Griffith's support, (2) to determine the size of the encroachments, and (3) to determine the frequency of the encroachments, it is reasonable to conclude that Mr. Griffith intended the trustee to have the corollary power of deciding which trust should bear the burden of the encroachments. We can find no language restricting the trustee's discretion in this area, and if Mr. Griffith had intended for the trusts to be charged equally for the encroachments, such a provision could easily have been inserted in the trust instrument.

Having concluded the trustee had discretion with regard to charging the encroachments, the trial court could have properly substituted its judgment for that of the trustee only if the trustee had exhibited some abuse of discretion such as bad faith or fraud or if the conduct of the trustee is infected with some other abuse of discretion. *Turner v. Trust Co. of Ga.,* 214 Ga. 339, 346 (105 SE2d 22) (1958); *Cates v. Cates,* 217 Ga. 626, 632 (124 SE2d 375) (1962).

First National and Arthur Griffith, Jr. argue that First National exercised sound judgment in charging the encroachments as it acted in accordance with the testator's intention. They contend that Mr. Griffith's intent in making his will and in setting up the trust was to provide for his wife and his only son and not to provide for his stepsons. There is ample evidence to demonstrate this intention: (1) Mr. Griffith left a small bequest to one of the Cutlers and nothing to the other two; (2) The only way the Cutlers could benefit from Mr. Griffith, Sr.'s property was by Mrs. Griffith's exercise in their favor of her general power of appointment; (3) Mrs. Griffith only had this general power of appointment for marital-deduction purposes; (4) Mrs. Griffith had the power to invade the marital deduction trust only for the benefit of the descendants of Mr. Griffith and not for her own sons; (5) Arthur Griffith, Jr. was to take all the property left in the trusts at Mrs. Griffith's death (absent that over which she exercised her general power of appointment).

In addition, a proper consideration for the Trustee, when determining how much to charge each trust for the encroachments, was that the Cutlers obtained through their mother a house bought by Mr. Griffith, Sr. This house, on Corbin Avenue in Macon, was originally bought by Mr. Griffith, Sr. for his first wife. After her death, he and Arthur Griffith, Jr. each owned a one-half interest in the house. However, Arthur Griffith, Jr. gave his interest to his father

in 1948 who, in 1967, gave the undivided ownership of the house to his second wife, the Cutlers' mother, who eventually passed the house to her sons at her death. Shortly thereafter the Cutler brothers sold the house for $49,750.00.

In charging the trusts, First National could properly consider the equities involved. Knowing that the Cutlers had obtained $49,750.00 through Mrs. Griffith and believing that Mr. Griffith intended through the trust to benefit his only son more than the Cutlers, we do not believe that the trustee abused its discretion by charging Trust A $89,933 and Trust B $26,667. As a result, Arthur Griffith, Jr. will finally obtain $71,733 through his father (he obtained nothing through his father's will which funded the trust). The Cutlers will obtain $10,167 through the trust in addition to the $49,750.00 they receive from selling the house. The equities clearly favored the trustee passing more to Arthur Griffith, Jr. through the trust than to the Cutlers.

The trustee's proposal for the charging of the encroachments is in accordance with Mr. Griffith's intent, is a proper exercise of its discretion, and the trial court erred in not so holding.

2. Finally, the Cutlers asked the trial court to order the trustee to take no active part in this litigation, or in the alternative, they asked that the trustee be removed because of a conflict of interest. This motion was denied. We find no error. Appellate courts will not reverse decisions in the exercise of a discretionary power of removal of a trustee unless there has been an abuse of that discretion. Bogert, Trust and Trustees, Ch. 25 § 527, p. 52-53 (1978). Assuming there might have been a conflict of interest at one time, we find that the trustee has acted within its discretion and in accordance with the trustor's intention — the most important factor in this case.

*Judgment in Cases Nos. 38231 and 38233 reversed; Case No. 38232 affirmed in part, reversed in part; Case No. 38234 moot. All the Justices concur, except Smith, J., who dissents as to Division 1 and to the judgment.*

DECIDED FEBRUARY 17, 1982 —
REHEARING DENIED MARCH 10, 1982.

*Mincey & Kenmore, David L. Mincey, David L. Mincey, Jr.,* for appellant (case no. 38231).

*Harris, Watkins, Davis & Chambless, John B. Harris, Jr., Mary M. Katz, John D. Comer, Timothy K. Adams,* for appellees (case no. 38231).

*John B. Harris, Jr., Mary M. Katz,* for appellants (case no.

38232).

*David L. Mincey, David L. Mincey, Jr., John D. Comer, Timothy K. Adams,* for appellees (case no. 38232).

*John D. Comer,* for appellants (case nos. 38233, 38234).

*John B. Harris, Jr., David L. Mincey, Timothy K. Adams,* for appellees (case nos. 38233, 38234).