### S97A0724. OTWELL et al. v. FIRST NATIONAL BANK OF GAINESVILLE et al.
(491 SE2d 785)

SEARS, Justice.

Appellants challenge the trial court's decision permitting the trustee of two trusts established for the benefit of one beneficiary to transfer funds from one trust to another trust, in order to reimburse the latter trust for expenditures made on the beneficiary's behalf. The trust instruments direct that the trust from which the funds originally were paid is not the primary source for expenditures to benefit the beneficiary, but rather is the secondary source. The primary source for such expenditures is the trust from which reimbursement was sought. Pretermitting whether the trustee violated its fiduciary duties by failing to follow the trust instruments' directives, the payments, had they been paid out of the primary trust, would have been authorized and for a proper purpose. Moreover, by allowing the trustee to transfer funds from one trust to another, the trial court did not disturb the grantor's overall scheme of disposition and testamentary intent. Therefore, we agree with the trial court that the trustee could reimburse funds paid out of the secondary trust from the primary trust, and we affirm.

In 1984, Roy P. Otwell, Sr., ("Otwell, Sr.") created an inter vivos trust in which the First National Bank of Gainesville ("The Bank") was appointed trustee. The trust instrument authorizes the Bank to pay all or any part of trust income to Roy Otwell, Jr. ("Otwell, Jr."), or, alternatively, to accumulate such income as trust principal. If necessary, the Bank also is authorized to encroach upon the inter vivos trust's corpus to provide for Otwell, Jr. The inter vivos trust grants the Bank, as trustee, "power to do all things and to execute such instruments as may be deemed necessary or proper, including the powers enumerated in [Ga. L. 1973, pp. 846-856]."[1] Upon Otwell,

---

[1] These provisions concerned the incorporation of fiduciary powers by reference, and

Jr.'s death, the inter vivos trust directs the Bank as trustee to distribute any remaining corpus equally among Otwell, Jr.'s two adult children, or, if they are deceased, to their descendants. Otwell, Jr. has been declared legally incompetent, and his two children are his appointed guardians.

In 1987, Otwell, Sr. executed his last will and testament, in which he directed that upon his death, one quarter of his estate was to be placed in a testamentary trust for the benefit of Otwell, Jr. The remaining three quarters of Otwell, Sr.'s estate was devised to his three daughters, Otwell, Jr.'s siblings. After Otwell, Sr. died in 1988, a caveat was filed against his will by Otwell, Jr. and his children, who had not been mentioned in their grandfather's will. In order to resolve the caveat, a consent order was entered that modified the terms of both Otwell, Sr.'s will and the testamentary trust.[2] The will was modified to devise $100,000 each to Otwell, Jr.'s children, and to place Otwell, Sr.'s home in trust, with the Bank as trustee, for Otwell, Jr. to reside therein until his death, at which time the home will pass to his two children. Provision also was made to pay over a quarter of a million dollars in attorney and administrative fees out of the estate.

The consent order modified the terms of the testamentary trust to authorize the Bank to expend testamentary trust income for Otwell, Jr.'s benefit in those years in which his income from other sources, including the inter vivos trust, is insufficient to maintain him. Such income expenditures from the testamentary trust are authorized only when Otwell, Jr.'s income from other sources has been depleted; excepting that, regardless of whether Otwell, Jr.'s income from other sources has been depleted, the Bank is authorized to use testamentary trust income to pay for (1) taxes and insurance on Otwell, Jr.'s home, (2) Otwell, Jr.'s hospitalization and health care, and (3) extraordinary homeplace maintenance expenses.[3] Testamentary trust principal may be invaded only after all other available principal and income has been depleted, and the testamentary trust (as modified) expressly states that its principal should remain constant unless and until the principal of the inter vivos trust is depleted. Upon Otwell, Jr.'s death, any remaining corpus of the testamentary trust is to be divided equally among his two children and his

---

originally were set forth in OCGA § 53-15-3. They have since been repealed. Ga. L. 1991, p. 810, § 1. The current law on the incorporation of fiduciary powers by reference is set forth in OCGA § 53-12-230 et seq.

[2] All parties to this action also are parties to the consent order.

[3] These expenses include, but are not limited to, timely re-roofing costs, major structural repairs, normal exterior repainting, and reasonable costs needed to bring the home into good condition in anticipation of Otwell, Jr.'s occupancy. These expenses exclude interior decoration and interior changes that are not required for health purposes.

three siblings.

Otwell, Sr. died in 1988. In the five years that followed, the Bank made considerable expenditures, alleged to exceed $225,000, primarily to renovate Otwell, Sr.'s home, which had fallen into disrepair, before Otwell, Jr. and his caretakers took up residency. The expenditures were paid directly from the portion of Otwell, Sr.'s estate intended to fund the testamentary trust. However, during those five years, the testamentary trust was not established, as instructed in Otwell, Sr.'s will. The Bank states that the expenditures it paid from the estate exceeded the income of the testamentary trust assets, as calculated based upon one-fourth of the entire estate's value, and thus had to be charged against assets designated for the testamentary trust's principal. In order to rectify the depletion of testamentary trust principal, the Bank sought to transfer funds from the corpus of the inter vivos trust to the testamentary trust. Otwell, Jr.'s children, acting on their own and on his behalf, opposed that transfer.

It was not until 1993 that the testamentary trust was funded. In 1995, the Bank filed a declaratory judgment action concerning its administration of the estate and the trusts, and the trial court granted the Bank partial summary judgment authorizing it to transfer funds from the inter vivos trust to the testamentary trust in order to cover the expenditures made from estate funds eventually used to establish the testamentary trust. Otwell, Jr.'s children, acting on their own and on his behalf ("Appellants"), appeal from that ruling, claiming that the Bank did not have authority to transfer the funds.

1. At the outset, we note that Appellants also claim that the Bank has breached its fiduciary obligations by, among other things, (1) failing to comply with the trust instruments' directives; (2) not establishing the testamentary trust until August 1993; (3) not using inter vivos funds before expending Otwell, Jr.'s share of the estate; (4) not limiting its spending on Otwell, Jr.'s behalf in a reasonable manner; and (5) attempting to disperse less than equal shares to Otwell, Sr.'s children. In granting partial summary judgment affirming that the Bank had the authority to reimburse the testamentary trust from the inter vivos trust, the trial court reserved ruling on whether the Bank had violated its fiduciary duties, as alleged by Appellants. That particular issue remains pending before the trial court.

Likewise, in reviewing the trial court's ruling authorizing the Bank to transfer money from one trust into another, this Court does not decide whether the Bank properly discharged its fiduciary obligations, and Appellants' claims of fiduciary breach are not considered as part of this appeal.

2. Appellants argue that the terms of the inter vivos trust only

permit payments to be made for the benefit of Otwell, Jr., and that those terms do not authorize the Bank to transfer funds to the testamentary trust. Furthermore, they claim that the testamentary trust does not permit expenditures from trust principal until all other sources of principal and income have been depleted. Therefore, Appellants argue, the disbursements made by the Bank were unauthorized, and the Bank should not be permitted to correct its error by replenishing the testamentary trust with another trust's funds.

This argument, however, obscures the real issue. Pretermitting whether the Bank violated its fiduciary obligation to follow the trust instruments' directives, it is undisputed that inter vivos trust income and principle could have been expended for the benefit of Otwell, Jr. No party to this appeal claims that the contested expenditures at issue were made for anything other than Otwell, Jr.'s benefit. The issue thus becomes whether, having made payments out of estate funds intended to establish the testamentary trust, the Bank can reimburse that trust from the inter vivos trust. Because the money expended was used for a purpose that it could have been used for, had it been paid directly from the inter vivos trust, we agree with the trial court that the Bank may reimburse the testamentary trust from the inter vivos trust. Put another way, had the Bank made the contested expenditures directly from the inter vivos trust, using income first and then principal, there would be no dispute regarding their propriety. Thus, by paying money for a proper purpose from a secondary source, and then reimbursing that source from the inter vivos trust, the Bank has not taken from Appellants what they would otherwise be entitled to.

Appellants, however, allege that the money left by Otwell, Sr. for the benefit of Otwell, Jr. has been substantially depleted by the Bank, and would have this Court order the Bank to reimburse the testamentary trust out of its own funds, and leave the inter vivos trust untouched. At the same time, however, Appellants concede that the expenditures were for the benefit of Otwell, Jr., and thus were made by the Bank for a purpose permitted by the trusts. Clearly, then, were we to order the Bank to reimburse the testamentary trust with the Bank's own funds, the Bank itself would be paying for Otwell, Jr.'s care, despite Otwell, Sr.'s ample provision for such. That would provide Appellants with an enormous windfall.[4]

Appellants also claim that the trial court's order permits the Bank to treat two trusts with "different beneficiaries" as one trust, to

---

[4] Appellants also claim that more prudent alternatives existed that the Bank could have followed in providing for Otwell, Jr., rather than spending money out of the estate and then reimbursing the estate from the inter vivos trust. This argument, we believe, concerns the Bank's exercise of its fiduciary duties, and thus is not part of this appeal.

the detriment of the purported "beneficiaries" of the inter vivos trust — Otwell, Jr.'s children. While it is true that Otwell, Jr.'s children have a 50 percent interest in any remaining corpus of the inter vivos trust, and only a 20 percent interest in the testamentary trust corpus, those interests are entirely subordinate to the overall testamentary scheme established by Otwell, Sr. to provide for Otwell, Jr. — the trusts' primary beneficiary — with trust income and principal. Moreover, Otwell, Jr.'s children are parties to the consent order establishing them as second-line beneficiaries with only a 20 percent interest in the latter trust, and they cannot complain of that status on appeal.[5]

3. Appellants argue that a trustee is prohibited from recovering payments made on behalf of a beneficiary where the beneficiary "has so changed his position that it is inequitable to compel him to make repayment."[6] This established principle is not applicable to this case, however, as it concerns instances where a trustee has either made overpayments, paid out money mistakenly, or has made payments to which a beneficiary was not entitled.[7] Those facts simply do not exist in this case. Moreover, the record reveals that Appellants were provided with periodic accounting statements showing that the expenditures at issue were being made, and thus had knowledge of the payments, and at least tacitly acquiesced to them.

Furthermore, we note that at the time of Otwell, Sr.'s death, the estate was comprised primarily of real property and held very little liquid assets. In the years immediately following Otwell, Sr.'s death, had the Bank relied solely upon the inter vivos trust for funds with which to care for Otwell, Jr., then that trust's liquid assets might well have been depleted. Appellants concede that would have created an undesirable situation where there was no "cash cushion" to ensure for Otwell, Jr.'s care in case of a medical emergency. In that regard, the record shows that, shortly after Otwell, Sr.'s death, Appellants expressed their concern to the Bank that sufficient liquid assets be kept available to care for Otwell, Jr., and to ensure that, if a medical emergency arose, the estate's real property holdings would not have to be sold hastily, for low prices. All of these factors lead us to reject Appellants' request that the Bank be equitably estopped from replenishing the testamentary trust with inter vivos trust funds.[8]

4. Finally, we note that the contested expenditures did not alter

---

[5] *Management Search v. Avon Products,* 166 Ga. App. 262, 263 (304 SE2d 426) (1983).

[6] Restatement (Second) of Trusts, § 254 (1959).

[7] Id. See *Hoffa v. Fitzsimmons,* 673 F2d 1345, 1354, n. 27 (D.C. Cir. 1982); *Brent v. Smathers,* 547 S2d 683, 686 (Fla. App. 1989).

[8] But see Restatement (Second) of Trusts, § 199 (c), regarding equitable relief for a trustee's breach of fiduciary obligations.

the overall testamentary scheme established by Otwell, Sr. — which was to provide for Otwell, Jr. throughout his lifetime.[9] As explained above, the contested expenditures were ultimately charged against the inter vivos trust, and the Bank, as trustee, was vested with discretion to encroach upon that trust in order to provide for Otwell, Jr.'s care. A court may interfere with a trustee's exercise of its discretion only to correct an abuse thereof, or upon evidence of bad faith or fraud.[10] By indirectly encroaching upon the inter vivos trust — first using estate funds intended to establish a separate trust, and then replenishing those funds from the inter vivos trust — the Bank may not have acted in accordance with the grantor's directives, but we do not believe it abused its discretion or acted in bad faith.

*Judgment affirmed. All the Justices concur, except Benham, C. J., Hunstein and Carley, JJ, who dissent.*

CARLEY, Justice, dissenting.

The majority holds that the Bank, as Trustee of the inter vivos trust, can reimburse funds which the Bank, as Trustee of the testamentary trust, previously expended without authority to do so. In my opinion, such a collusive reimbursement of the testamentary trust from the funds of the separate inter vivos trust is unauthorized. Therefore, I must respectfully dissent.

The majority concludes that the reimbursement is proper because the funds of the testamentary trust were disbursed for a purpose which the Bank, as Trustee of the inter vivos trust, could have expended the funds of that trust in the first instance. However, it is an accepted principle of law that a trust is a legal entity separate from any and all other legal entities. *Henderson v. Collins*, 245 Ga. 776, 780-781 (5) (267 SE2d 202) (1980). This principle is clearly applicable here, even though the testamentary and inter vivos trusts have a common Settlor, Trustee and Beneficiary. "It is ordinarily the duty of the trustee . . . to keep the trust property separate from property held upon other trusts . . . ." Restatement (Second) of Trusts, § 179, Comment a. Thus, unlike the majority, I believe that it is immaterial that, when the disbursements were made, the Bank, as Trustee of the inter vivos trust, could have validly paid the same amounts from the trust estate. Because the inter vivos trust is an entirely separate legal entity, the initial inquiry is whether the Bank, as Trustee of the inter vivos trust, has the authority to reimburse the separate testamentary trust for the expenditures. See generally *Ivey v. Ivey*, 266 Ga. 143, 144 (3) (465 SE2d 434) (1996). The majority cites nothing which authorizes the Bank, as Trustee of the

---

[9] *Griffith v. First Nat. Bank*, 249 Ga. 143, 146 (287 SE2d 526) (1982).
[10] Id.

inter vivos trust, to deplete the corpus of that separate trust for the purpose of reimbursing the testamentary trust for past voluntary expenditures made on behalf of the Beneficiary. The trust agreement creating the inter vivos trust only authorizes the Bank, as the Trustee thereof, to provide directly for the Beneficiary's present and future needs, and does not permit it to reimburse another for the volitional payment of the Beneficiary's past expenses. See generally *Gilmore v. Gilmore.* 201 Ga. 770, 777 (41 SE2d 229) (1947); OCGA § 13-1-13. Therefore, by allowing the Bank to be reimbursed for the sums intentionally expended in breach of its fiduciary duty as Trustee of the testamentary trust, the majority authorizes the Bank also to commit a separate breach of its fiduciary duty owed as Trustee of the inter vivos trust. Having voluntarily made the unauthorized expenditures from the testamentary trust, the Bank should not be entitled to reimbursement from the inter vivos trust, the terms of which do not authorize its Trustee to make such reimbursement.

The majority concludes that a failure to order reimbursement from the separate inter vivos trust would result in a "windfall" to the Beneficiary. However, if, under the terms of the inter vivos trust, its Trustee is not authorized to make reimbursement for past voluntary expenditures, then a court-ordered reimbursement from the inter vivos trust would constitute an unjustified boon to the Bank. Contrary to the Settlor's expressed intent in creating the inter vivos trust, such an order would allow the Bank to recoup from that legal entity money lost as the result of the breach of its fiduciary duty to the separate testamentary trust. This would violate the universally accepted and well settled rule of construction that it is the intent of the Settlor that controls. See *Perling v. C&S Nat. Bank*, 250 Ga. 674, 676 (1) (300 SE2d 649) (1983). Having breached its fiduciary duty as Trustee of the testamentary trust by the unauthorized expenditure of funds from that source, the Bank should not be allowed to recoup that loss by obtaining court-ordered reimbursement from the separate inter vivos trust. This would constitute an unauthorized encroachment upon the corpus of the inter vivos trust to reimburse for funds which the Bank voluntarily disbursed from the testamentary trust contrary to the Settlor's instructions. There is no contention in this case that, if the Settlor had named separate Trustees for the testamentary and inter vivos trusts, the Trustee of the inter vivos trust would be authorized to reimburse the Trustee of the testamentary trust for funds wilfully expended contrary to the Settlor's directions and, consequently, in violation of the duty owed as a fiduciary. Although the Settlor did name the Bank as Trustee of both trusts, he nevertheless created two separate trusts which the Bank is compelled to recognize as two separate legal entities. Under the majority's analysis, the Bank is authorized to ignore the Settlor's

directions and to disregard the separateness of the two legal entities, simply because the Settlor named the Bank as Trustee of both trusts.

> We know of no authority of law for the mingling of trust funds proposed by this inquiry. Not for a moment could it be considered if the two trusts were to be administered by distinct trustees. That the trustees were or are the same, or that the corpus of each fund finally is to be paid to the same person, can make no difference. Each trust must stand alone, otherwise losses legitimately to be borne, with corresponding loss of income by one, could be imposed in part upon the other.

*Moore v. McKenzie*, 92 A 296, 298 (Me. 1914).

Thus, the mere fact that, when made, the expenditures on behalf of the Beneficiary could have come from the inter vivos trust does not justify the Bank's recoupment from that trust. Because it made the voluntary expenditures from the testamentary trust, the Bank would not be entitled to seek reimbursement unless such reimbursement were authorized under the terms of the inter vivos trust. The majority's holding

> does not recognize that there are limitations within which trustees *and the court* must keep in the administration of trusts. The plan of the trustor must be followed. It may not be departed from in particulars wherein it is specific, merely because it may be considered in those particulars to be unwise. The trustee cannot substitute his own plan because he thinks it is a better one, and if he does the court should not approve his action to the prejudice of any beneficiary, *even if it has operated to the general advantage of the estate.*

(Emphasis supplied.) *In re Bothwell's Estate*, 151 P2d 298, 302 (Cal. App. 1944). Because the majority's holding violates the principle that each trust is a separate legal entity whose trustee has the fiduciary duty to perform in accordance with the Settlor's directions, I dissent.

I am authorized to state that Chief Justice Benham and Justice Hunstein join in this dissent.

DECIDED SEPTEMBER 22, 1997 —
RECONSIDERATION DENIED NOVEMBER 3, 1997.

*Hawkins & Parnell, Jack N. Sibley, Cullen C. Wilkerson,* for appellants.

*Stewart, Melvin & Frost, J. Douglas Stewart, W. Woodrow Stew-*

*art, Caldwell & Watson, Harmon W. Caldwell, Jr., Wade H. Watson III*, for appellees.