In the Supreme Court of Georgia

Decided: November 23, 2015

S15G0567.  ROLLINS, et al. v. ROLLINS, et al.

Benham, Justice.

This dispute over trust management and other related issues has again come before this Court as a result of our grant of the defendants' petition for certiorari.  Many details of the trusts and other entities involved in the dispute have been set forth in the initial opinion of the Court of Appeals, *Rollins I;*[1] the opinion of this Court upon our initial grant of certiorari review, *Rollins II;*[2] and the second opinion of the Court of Appeals upon our remand of the case to that court for further consideration, *Rollins III.*[3]  Here, we will attempt to set forth the facts and procedural posture of the case only as necessary for an understanding of our holding and, to the extent possible, to clarify and simplify the complicated structure of the trusts involved in the case and the assets held in the trusts.  Confusion may result when the defendants are referred to simply

---

[1]  321 Ga. App. 140 (741 SE2d 251) (2013).

[2]  294 Ga. 711 (755 SE2d 727) (2014).

[3]  329 Ga. App. 768 (766 SE2d 162) (2014).

as "trustees," since there are three defendants, and each of them are not involved in each allegation of wrongdoing. Moreover, with respect to the various transactions at issue in the case, one or more of the defendants may have acted as trustee, partner, or corporate manager. Consequently, in this opinion we use the term "trustee" or "trustees" only when referring to that actual status and, otherwise, we refer to the appellants as "defendants."

Each of the four plaintiffs/appellees is (or was until age 45 when the trust assets were transferred to him or her) the beneficiary of a Subchapter S-Trust established by their grandfather O. Wayne Rollins in 1986. Defendant Gary Rollins (Wayne's son and plaintiffs' father) is the trustee of these S-Trusts.[4] Although at least two of the S-Trusts have now terminated as a result of the age of the beneficiary, and the assets of those trusts have been transferred to the individual beneficiary, for simplicity's sake we will refer to the interests originally held in these trusts as the S-Trusts.

In 1968, in what became an ongoing effort to establish a network of

---

[4] Each of the other five grandchildren of O. Wayne Rollins is also the beneficiary of an S-Trust, and their father, Randall Rollins, Wayne's other son, is the trustee of those S-Trusts, but those other beneficiaries are not involved in this dispute. Although this Court stated in *Rollins II*, supra, 294 Ga. at 711, that Gary "is the sole trustee of the S-Trusts," we hereby clarify that Gary is the trustee of the four S-Trusts whose beneficiaries (his children) are the plaintiff/appellees in this case.

entities to preserve and convey assets to his heirs, Wayne first established the Rollins Children's Trust ("RCT")[5], and each of his grandchildren are the beneficiaries of RCT. Wayne created several family entities to hold RCT's assets, including Rollins Holding Company ("RHC") and LOR, Inc. ("LOR"). The S-Trusts hold minority interests in these family entities, and defendants Gary Rollins and his brother Randall Rollins are the managers of these entities. Later, in 1988, Wayne created a general partnership, Rollins Investment Fund, known as RIF. Each plaintiff's S-Trust is a partner in RIF, along with the S-Trusts of the other grandchildren; Gary, Randall, and the Estate of O.Wayne Rollins are also partners. Upon reaching age 45, a beneficiary's S-Trust is terminated and the beneficiary becomes a partner in RIF. As a result of this structure, most of the family-owned assets in dispute in this case are ultimately held in the RIF partnership and, until a plaintiff reaches age 45, each plaintiff's partnership interest is held in trust. The original partnership agreement authorized only pro rata distributions of cash flow to the partners "at such times as the [p]artners shall reasonably decide" to make distributions.

---

[5] Appellants Gary Rollins and Randall Rollins, along with appellant Henry B. Tippie, are the trustees of RCT.

Wayne died in 1991. In 1993, the RIF partnership agreement was amended so that, inter alia, for the first time since its inception, non-pro rata distributions could be made in the form of redemptions from a partner's capital account. The amendment also changed the structure of the partnership by vesting exclusive authority to manage the partnership and make distribution decisions in Gary and Randall, who were named managing partners. This amendment to the partnership agreement is the catalyst around which all the disputes in this case revolve.

Gary and Randall contend that the primary purpose of this amendment was to permit Wayne's estate to redeem assets to fulfill a charitable pledge in a manner that permitted the remaining partners to avoid capital gains taxes on the assets that were liquidated. Several years after this amendment, Gary and Randall created a distribution program whereby the two of them, in their capacities as RIF managing partners, may authorize non-pro rata distributions from the partnership capital accounts of the S-Trusts, or directly to the partnership accounts of the grandchildren if their S-Trusts have terminated by virtue of their age, based upon a formula that includes a personal code of conduct for eligibility. Gary and Randall also created several new family

4

entities controlled by them and funded by RCT assets. Gary and Randall contend these new entities were established primarily for the purpose of estate planning for future generations and also to minimize tax liability.

In their complaint, as amended, the plaintiffs raise claims of breach of fiduciary duty and breach of trust against the defendants in several particulars–by allegedly failing to make proper accountings to plaintiffs with respect to the S-Trusts and the family entities; by making trust investments in illiquid family-owned entities controlled by Gary and Randall, leaving the plaintiffs with unmarketable assets when the S-Trust assets are distributed free of trust to each beneficiary upon reaching the mandated age; by creating a distribution scheme that imposes a code of conduct upon each beneficiary to qualify for distributions from trust investments; by creating a conflict of interest as a result of Gary's and Wayne's roles as trustees of the S-Trusts and RCT while they are simultaneously managers of family entities held by the trusts; and by failing to maximize income distributions in favor of growing trust principal. Plaintiffs also assert claims for an accounting; constructive fraud/recision for failure to disclose and fraudulent misrepresentation regarding certain transactions for which Gary and Randall allegedly improperly obtained

5

the plaintiffs' written consent; and for attorney fees. Plaintiffs seek monetary damages, the removal of the trustees of RCT and the S-Trusts, and other relief.

Both sides filed motions for summary judgment. The trial court ruled in favor of the defendants as to each of plaintiffs' claims, with the exception of the breach of trust claim for the defendants' failure, at any time prior to the filing of the lawsuit, to make required periodic accountings to the plaintiffs for the assets held in the trusts.[6]

In this case's first appearance before the Court of Appeals, in *Rollins I*, that court identified the following enumerations of error raised by the plaintiffs: the trial court's refusal to order an accounting of family entities held within the trusts; its refusal to find that various actions taken by Gary and Randall at the entity level, rather than the trust level, amounted to breaches of trust and fiduciary duty; its grant of the defendants' motion for summary judgment on the claim for constructive fraud and rescission with respect to the challenged

_____

[6] The trial court denied the request for any further accounting with respect to the trusts, however, since it found the plaintiffs had obtained adequate relief by disclosures about trust holdings made during discovery in the case. We note that the complaint also sought to review the books of the family-controlled corporate entities in which trust assets were invested, LOR, Inc. and RHC, and of the RIF partnership in which each trust was a partner. The trial court granted summary judgment to the defendants with respect to the claim for attorney fees except with respect to the breach of trust claim for failure to make proper accountings.

transactions on the ground that the plaintiffs suffered no injury; and, in general, the grant of summary judgment to the defendants. *Rollins I*, supra, 321 Ga. App. at 140. The Court of Appeals reversed the trial court's ruling denying the plaintiffs' request for an accounting of the family-owned entities held in each plaintiff's S-Trust and remanded that issue to the trial court. Id. at 146 (1). The Court of Appeals held that even though the S-Trusts hold only minority interests in the family-owned entities, under the facts of this case the requested information is within the control of the S-Trust trustees since Gary and Randall control these entities and it should be made available to the plaintiffs. Id. at 145 (1). That court also held that Gary and Randall owe trustee-level fiduciary duties to the plaintiffs even with respect to decisions made at the entity level. Id. at 150 (2) (a). Applying that standard of care, the Court of Appeals concluded that issues of fact remain for a jury to determine with respect to the plaintiffs' claim that Gary and Randall improperly amended the RIF partnership agreement in a manner plaintiffs claim damaged them, thereby breaching Gary and Randall's fiduciary duty. Id. at 153 (2) (b) (i). Likewise, that court also concluded a jury issue is created with respect to the plaintiffs' claim that Gary and Randall improperly failed to disclose certain facts to them regarding the

7

amended partnership agreement, thereby creating liability for constructive fraud. Id. at 153-154 (2) (b) (1).  Finally, the Court of Appeals concluded a question of fact exists with respect to the claim that the defendants wrongfully exceeded their scope of discretion under the trust instruments when they implemented a code of conduct for each plaintiff's eligibility for trust distributions and made allegedly arbitrary distributions amounting to a breach of trust. Id. at 156 (2) (b) (ii).[7]

This Court granted the defendants' petition for certiorari review and reversed the Court of Appeals on two specific issues in *Rollins II*.  Simply stated, this Court held the Court of Appeals erred with respect to its ruling that defendants owe the plaintiffs an accounting of the family entities, concluding that the Court of Appeals failed to give due deference to the trial court's discretion to grant or deny the equitable relief sought in the prayer for an accounting.  294 Ga. supra at 713 (1).  Accordingly, the ruling on this issue was vacated and the case was remanded to the Court of Appeals for it to reconsider the accounting issue in light of the trial court's discretion. Id. at 713-714 (1).

[7] The Court of Appeals did not address plaintiffs' assertion that the trial court erred in failing to find the defendants breached their fiduciary duties by replacing marketable securities held in the trusts with illiquid investments in family trust entities, finding review of that issue was not ripe given its holding that plaintiffs are due an accounting of the family entities.

8

This Court also concluded the Court of Appeals erred in holding that Gary's and Randall's management of family entities should be scrutinized under the heightened trustee-level fiduciary standard. Id. at 715 (2). We held that, in this case, the application of a heightened trustee-level fiduciary standard was inappropriate given the intent of the settlor and the fact that the trusts hold only a minority interest in the family entities. Id. at 714 (2). This Court stated:

> Looking to the intention of the settlor, we find that he took great pains to ensure that the trustees could not take actions at the family entity level solely to benefit plaintiffs as S-trust beneficiaries–unless those actions were also in the interests of the other shareholders. The settlor accomplished this by making Gary Rollins the sole trustee of the [plaintiffs'] S-trusts, but giving him shared control of LOR, RHC and RIF with his brother Randall, who has no obligations to the [plaintiffs] as a trustee of the [plaintiffs'] S-trusts. . . .[T]he only reasonable conclusion with regard to the settlor's intention is that he did not intend for the trustees to be held to trustee level fiduciary standards when performing their corporate duties.

Id. at 714-715 (2), citing *In re Estate of Schnur*, 242 N.Y.S.2d 126, 132 (N.Y.Sur.Ct. 1963). Accordingly, we held that the defendants should be held to "a corporate level fiduciary standard when acting as directors." Id. at 715 (2). We instructed the Court of Appeals, on remand, "to apply a corporate fiduciary standard when considering the [defendants'] conduct with regard to their

9

management of the corporate family entities held within the trusts." Id. at 716 (2).

Upon remand, the Court of Appeals again found fact issues remain for jury determination with respect to whether the defendants breached their fiduciary duty or committed a breach of trust for actions they took at the family entity level. *Rollins III*, supra, 329 Ga. App. at 770 (1) (a). That court concluded preliminary issues of fact were created by the record which remain to be resolved with respect to the capacity in which Gary and Randall were acting (whether as trustee, corporate manager, or managing partner) at the time of the alleged wrongful acts.[8] Specifically, the Court of Appeals concluded issues of fact remain as to the capacity in which Gary and Randall were acting (1) when they approved the RIF partnership amendment, and (2) when they created a code of conduct for the third generation heirs (which includes these plaintiffs) and then made non-pro rata distributions to the RIF partners based

---

[8] We reject plaintiffs' assertion that certain Court of Appeals rulings in *Rollins I* were unaffected by this Court's opinion in *Rollins II* and are now "law of the case." Pursuant to *Shadix v. Carroll County*, 274 Ga. 560, 563 (1) (554 SE2d 465) (2001), when, on certiorari review, this Court reverses a portion of a Court of Appeals decision but does not address a division of that opinion, "we leave it to the Court of Appeals to determine what impact, if any, our reversal has upon that particular division." It is apparent from *Rollins III* that the Court of Appeals chose to reconsider its previous opinion in its entirety upon remand.

upon compliance with the code of conduct. Accordingly, the Court of Appeals concluded that an analysis of which fiduciary standard applies to each alleged wrongful act is precluded until the case is remanded for a jury to determine what role Gary and Randall were assuming with respect to each such act, which would then dictate which fiduciary duty applied. Id. at 781 (3) (a) (ii). For this reason, the Court of Appeals also remanded to the trial court the issue of whether the defendants owed the plaintiffs an accounting of the family entities held as trust assets so the trial court could reconsider its decision and exercise its discretion in light of the Court of Appeals' opinion. Id. at 782 (4).

Again, this Court granted the defendants' petition for certiorari. We directed the parties to address the question of whether a jury must determine which fiduciary duty applies to the various decisions and transactions made by the defendants.[9]

1. The Court of Appeals concluded it could not comply with this Court's direction to apply the more deferential corporate-level fiduciary standard with

---

[9] Pursuant to Supreme Court Rule 45, when a petition for certiorari is granted, "appellant and appellee shall file briefs only in response to the question or questions posed by the Court in its order granting certiorari." Although the parties here have briefed additional issues, including whether the trial court erred in granting summary judgment to the trustees, we will, pursuant to Rule 45, address only the issues related to the question posed in the order granting certiorari.

respect to the defendants' management of the family entities without a jury's first determining the role in which the defendants were acting at the time of the complained-of conduct. Even the plaintiffs agree, however, that the facts of this case do not require a jury to determine which fiduciary standard applies to each challenged transaction because no material dispute of fact exists as to the capacity in which Gary and Randall acted in these transactions.

(a) Plaintiffs seek damages for the manner in which they have allegedly been impacted by certain corporate management decisions Gary and Randall have made in their role as managers of certain family entities, specifically RHC and LOR[10], such as the transfer of stock owned by LOR to a new partnership that Gary and Randall control and the decision to retain allegedly excessive earnings in LOR. Plaintiffs contend these actions effectively locked up control of the trust assets. The record shows, however, that Gary, Randall, and plaintiffs are not the only shareholders of these companies and, as we noted in *Rollins II*, plaintiffs' S-Trusts hold only minority interests in these family entities. Id. at 715 (2). For reasons set forth in *Rollins II*, this Court expressly held that where,

---

[10] Gary and Randall were always the managing shareholders of these family entities, and now their controlling interests in these entities are held in the form of voting trusts.

12

as here, "under the terms of a trust, the trustee is put in control of a corporate entity in which the trust owns a minority interest, the trustee should be held to a corporate level fiduciary standard when it comes to his or her corporate duties and actions." Id. at 716 (2). Further, we directed the Court of Appeals "to apply a corporate fiduciary standard when considering the [defendants'] conduct with regard to their management of the corporate family entities held within the trusts." Id. The record evidence demonstrates that the corporate decisions complained of by the plaintiffs could only have been made by Gary and Randall in their capacity as managers of the family entities and are precisely the type of conduct we directed the Court of Appeals to review in accordance with a corporate fiduciary standard. It is not necessary for a jury to determine the role Gary and Randall were playing at the time these corporate decisions were made. On remand, as before, the Court of Appeals is directed to apply a corporate fiduciary standard to these decisions.

(b) This does not preclude the Court of Appeals (or the trier of fact, if summary judgment is reversed) from applying a trustee-level fiduciary standard to decisions the defendants made as trustees of the trusts.

(i) *Plaintiffs' claims for actions taken on behalf of RCT.* For example,

plaintiffs assert the trustees of RCT breached their applicable duties when they invested trust assets in entities controlled by Gary and Randall. The trustees of RCT are Gary, Randall, and Henry B. Tippee. Although Wayne originally funded RCT with marketable assets, the plaintiffs claim the trustees later exchanged these assets for illiquid and non-marketable shares of family entities controlled by Gary and Randall for the purpose of permitting Gary and Randall to retain control of RCT assets even after they are to be distributed to the beneficiaries free of trust in certain stated proportions on their respective twenty-fifth and thirtieth birthdays (and upon the eventual termination of the RCT trust). Plaintiffs claim these transactions violated the terms of the RCT trust indenture and constitute a breach of trust. They also claim that conditioning distributions from RCT upon a code of conduct is a breach of fiduciary duty.

No issue is created for the jury to determine with respect to the role the defendants were playing at the time they took the complained-of actions on behalf of RCT. They were acting as trustees governed by the terms of the trust instrument. The indenture of trust that established the RCT grants the trustees the discretion to pay income in a non-pro rata manner or to make no payments

14

at all to any beneficiary. The trustees are granted the authority to dispose of and exchange trust assets in any manner the trustees deem proper "and to do any and all things in connection with such transactions as could be done by the [t]rustees as if they owned the trust property in their own right and for their own benefit." The trust indenture expressly stipulates that the trustees "shall be liable only for the use of ordinary care in execution of the trust . . . ." As this Court noted in *Rollins II*, "the cardinal rule in trust law is that the intention of the settlor is to be followed." 294 Ga. at 714 (2) (citing *Griffith v. First Nat. Bank & Trust Co.*, 249 Ga. 143, 146 (287 SE2d 526) (1982)). A trustee is required to administer the trust "in good faith, in accordance with its provisions and purposes." OCGA § 53-12-240 (b). See also OCGA § 53-12-241 ("[T]he trustee shall exercise the judgment and care of a prudent person acting in a like capacity and familiar with such matters, considering the purposes, provisions, distribution requirements, and other circumstances of the trust."); Restatement (Third) of Trusts § 76 (1) (2007) ("The trustee has a duty to administer the trust, diligently and in good faith, in accordance with the terms of the trust and applicable law"). On remand the Court of Appeals is directed to consider whether these actions were consistent with the authority granted to the trustees by the RTC trust instrument

15

and the standard of liability imposed by it when it determines whether the trial court erred in granting summary judgment to defendants with respect to their RCT management decisions.

(ii) *Plaintiffs' claims for actions taken on behalf of the S-Trusts.* Similarly, plaintiffs assert Gary breached his duty as trustee of their S-Trusts by causing assets of these trusts to be placed into entities controlled by Gary and Randall so they could, allegedly, control the assets in perpetuity contrary to the terms of the instrument creating the S-Trusts, which requires distribution of all assets "free of trust" when each S-Trust beneficiary reaches age 45. No preliminary issue for jury determination is created with respect to the role Gary was playing in the complained-of decisions or the fiduciary duty that should be applied to them. These alleged actions could only have been taken in Gary's capacity as a trustee and must be examined in accordance with the fiduciary and other duties imposed by the trust. The S-Trust instrument grants broad discretion to the trustee in management of the trusts, authorizing the trustee:

> [T]o do all things . . . as may be deemed necessary and proper, including . . . [t]o retain and carry on any business in which the trust acquires an interest, . . . to join with other owners in adopting any form of management for any business or property in which the trust may have an interest, [and] to become or remain a partner, general

16

or limited, in regard to any such business or property . . . .

Again, the trustee's duty is to administer the trust in accordance with its terms and purposes. *Hasty v. Castleberry*, 293 Ga. 727, 733 (3) (749 SE2d 676) (2013). On remand, the Court of Appeals is directed to apply to these trust decisions a trustee-level fiduciary standard consistent with the authority granted by the trust instrument when determining whether the trial court erred in granting summary judgment to Gary on these claims.

Plaintiffs also assert Gary and Randall breached fiduciary duties owed to them when Gary and Randall executed an RHC shareholder agreement that prohibits shareholders from selling or otherwise disposing of their shares to anyone other than another of Wayne's descendants without the consent of the company. The record evidence shows a trustee-level fiduciary duty applies to Gary's decision to execute this shareholder agreement on behalf of plaintiffs' S-Trusts. That standard of fiduciary duty would not be applied, however, with respect to Gary's and Randall's execution of the agreement on behalf of themselves individually or on behalf of their own trusts, as shareholders[11], or to

---

[11] Controlling shareholders like Gary and Randall owe a duty of fair dealing in some circumstances to minority shareholders. See *Monterrey Mexican Restaurant of Wise, Inc. v. Leon*, 282 Ga. App. 439, 448 (4) (638 SE2d 879) (2006); see also *Mon Ami Intern., Inc. v. Gale*, 264 Ga. App. 739 (3) (592 SE2d 83) (2004). We do not decide, however, whether they owed such a duty to

17

Randall's execution as president of RHC.

(c)  The next issue addressed by the Court of Appeals in *Rollins III* was the capacity in which Gary and Randall acted, and thus the duty they owed to the plaintiffs, when they executed the amendment to the partnership agreement about which the plaintiffs complain.  Both were RIF general partners under the original agreement, and the record demonstrates they voted their own partnership interests in favor of the amendment.  They also voted the shares of the Estate of O. Wayne Rollins as executors.  Additionally, Gary, acting as trustee of his four children's S-Trusts, voted those S-Trusts' interests;  Randall, acting as trustee of his five children's S-Trusts, voted his children's S-Trusts' interests;  and thus the vote to amend the partnership agreement was unanimous, as required by the original agreement.  The Court of Appeals was correct that different duties apply to the different roles Gary and Randall played at the time they executed the partnership agreement amendment.  But the roles and duties are not difficult to parse and do not require the submission of those issues to a jury.  Contrary to the conclusion of the Court of Appeals, the trier of fact is not

the S-Trusts in connection with their execution of the shareholder agreement on behalf of themselves as the parties have not briefed that question.

18

required first to determine which fiduciary duty applies to each defendant's decision to execute the partnership amendment before it can reach a finding about whether the duty was breached.

First, we note that the Court of Appeals concluded it could not determine as a matter of law whether Gary and Randall were acting in their respective capacities as trustees of the S-Trusts or as "managing partners" of the partnership, or both, when they executed the RIF partnership agreement amendment. *Rollins III*, supra, 329 Ga. App. at 775 (3) (a) (i). As clearly established by the record, however, Gary and Randall could not have been acting as managing partners at the time they executed the amended partnership agreement because, at that time, no such category of partners existed. The record shows Gary and Randall each executed the original RIF partnership agreement, created during Wayne's life, as well as the amendment adopted after Wayne's death, in his individual capacity as an RIF general partner and also in his capacity as trustee of the S-Trusts belonging to his respective children, which trusts were also partners in RIF. The original partnership agreement states it may be amended "with the consent of all [p]artners." Consequently, we conclude no issue of fact is created as to the capacity in which Gary and Randall

19

were acting at the time the amendment was approved. They were acting in two different capacities. When each man cast his own vote he was acting as a general partner; and when Gary cast the votes on behalf of plaintiffs' S-Trusts he was acting as the trustee of those trusts. The Court of Appeals erroneously concluded that the trier of fact could find that the decision to amend the partnership agreement was made in Gary's and Randall's capacity as managing partners. Id. at 776 (a) (i).

(i) *Plaintiffs' claims for Gary's decision to vote the S-Trust partnership interests.* It follows that the answer to the question posed on certiorari, as it relates to Gary's decision to vote the S-Trusts' partnership interests in favor of amending the partnership agreement (because amendment required unanimous consent), is that no jury issue is created as to which fiduciary duty applies to this transaction. The applicable duty is the one owed by a trustee to its beneficiary when viewed in light of the terms of this trust instrument and the intent of the settlor. See *Hasty v. Castleberry*, supra. Plaintiffs contend, in essence, that an issue of fact is created as to whether Gary breached his fiduciary duty to them as the trustee of their S-Trusts when, armed with the information he possessed about the terms of the amendment, he voted on behalf of the trusts to amend the

partnership agreement. Even though Randall was not the trustee of these S-Trusts, the plaintiffs contend that a jury could find he, also, is liable to the plaintiffs for any loss caused by Gary's alleged breach of trust as a participant to that breach, as set forth in Restatement (Second) of Trusts § 326 (1959).[12] Upon remand, the Court of Appeals is directed to evaluate the question of whether summary judgment was properly granted with respect to Gary's alleged breach of the trustee-level duty owed to the plaintiffs when he voted their S-Trust partnership interests in favor of the amendment (and also with respect to Randall's alleged liability as a participant in that breach).

(ii) *Plaintiffs' claims against Gary and Randall as individual partners.* Pursuant to this Court's opinion in *Rollins II*, a different standard is to be applied, however, with respect to the claim that both Gary and Randall, as individual partners of RIF, breached the duties owed by a partner to their other partners when the partnership agreement was amended. *Rollins II*, supra, 294 Ga. at 714-716 (2). As a preliminary matter, we note that the Court of Appeals' opinion is based upon the erroneous conclusion that the beneficiaries of the

---

[12] Section 326 states: "A third person who, although not a transferee of trust property, has notice that the trustee is committing a breach of trust and participates therein is liable to the beneficiary for any loss caused by the breach of trust."

trusts are partners of RIF to whom Gary and Randall owe the fiduciary duty that is owed by one partner to another, and its assumption that the beneficiaries are partners for purposes of plaintiffs' allegation that Gary and Randall are liable for wrongfully amending the partnership agreement without their knowledge or participation. *Rollins III*, supra, 329 Ga. App. at 776 (3) (a) (I) and n. 7. The partnership agreement identifies the S-Trusts as partners, not the individual beneficiaries of those trusts. This is an important distinction because since each S-Trust, and not its beneficiary, was an RIF partner at the time the amendment was executed, the trustee and not the beneficiary was authorized to vote on the amendment to the partnership agreement. Similarly, even though the Court of Appeals in *Rollins III* purported to apply the statutory duty of a partner to disclose material information to his or her other partners[13], that court failed to recognize that any duty owed by Gary and Randall to disclose the terms and consequences of the amendment to the other RIF partners was owed to the S-Trusts and not the beneficiaries themselves.[14] Since Gary is the trustee of each of his children's S-Trusts he would have owed this partnership duty of

---

[13] See OCGA § 14-8-20.

[14] At that point, none of the S-Trusts had terminated as a result of the beneficiary's age, so no individuals other than Gary and Randall were RIF partners.

disclosure to himself as the representative authorized to act and make decisions on behalf of each of these S-Trust partners. This fact will also be relevant to the Court of Appeals' analysis of whether Gary and Randall are entitled to summary judgment on plaintiffs' claim for constructive fraud as a result of their suppression of a material fact they allegedly had a duty to disclose, pursuant to OCGA § 23-2-53, as partners of RIF.[15]

Again, however, with respect to the claim that Gary and Randall breached the duties owed by a partner to their other partners when they, individually, voted to amend the partnership agreement, no jury issue is created as to which fiduciary duty applies. The applicable duty is the general duty of good faith and fair dealing owed by one partner to other partners, when viewed in light of the terms of the original partnership agreement.[16] See *Westminster Properties, Inc.*

---

[15] Constructive fraud requires proof of "intention to induce the plaintiff to act or refrain from acting." (Citation and punctuation omitted.) *Eason Publications, Inc. v. NationsBank*, 217 Ga. App. 726, 730 (3) (458 SE2d 899) (1995). Here, a preliminary legal question, and not a question for a jury, will be whether, under the circumstances of this case, partners Gary and Randall were required as partners to seek the beneficiaries' approval to amend the partnership agreement given they were acting as the trustees of the S-Trusts when they voted those trust interests, and whether there could have been any intention to induce the plaintiffs to act or refrain from acting when Gary was acting for them.

[16] In making a determination of whether summary judgment was properly granted on this issue, the Court of Appeals must also look to the terms of the original partnership agreement to determine what duties were owed by the partners. See OCGA § 14-8-18 ("The rights and duties of the partners in relation to the partnership shall be . . . subject to any agreement between them . . . .") That instrument grants the partners broad discretion to manage the partnership and "to take any

*v. Atlanta Assoc.*, 250 Ga. 841, 842 (1) (301 SE2d 636) (1983) (the intent reflected in the partnership agreement is the true test of the duty of care owed by partners to each other); *Hendry v. Wells*, 286 Ga. App. 774, 783 (2) (a) (650 SE2d 338) (2007) (an agreement between the partners "governs their behavior so long as it does not violate other law").

2. The Court of Appeals also held that preliminary issues for the jury were created with respect to the capacity in which Gary and Randall were acting when they adopted a set of conduct-based criteria for distributions to the plaintiffs and the other Rollins grandchildren of income derived from the family entities, and then proceeded to use those criteria to make non-pro rata distributions to the grandchildren. The record reflects the conduct-based criteria were applied by Gary and Randall to distributions made, or not, out of each plaintiff's partnership capital account.[17] These accounts are an asset of each plaintiff's S-Trust if he or she has not yet reached the age of 45. Nevertheless,

actions . . . that the Partners deem reasonably appropriate to carry out the objectives of the Partnership." That agreement further states that the partners shall not be liable to the "Partnership" for any act performed within the scope of authority conferred upon the partners by the agreement, "except for their own acts of malfeasance, gross negligence or intentional misrepresentation." But, in contrast to the terms of the amended agreement, the original agreement does not define or limit the duty of partners to other partners.

[17] No claim is made that the RIF managing partners improperly credited plaintiffs' partnership capital accounts in amounts that were not in accordance with their partnership interests.

24

even with respect to a plaintiff whose partnership interest is still held in trust, or was so held at any time such a distribution was made, it is clear from the record evidence that the decision to pay, or not, a distribution from any given capital account would be a decision made by Gary and Randall in their respective capacities as managing partners under the amended partnership agreement. It would not be a decision made by Gary in his capacity as trustee of the plaintiffs' S-Trusts. Accordingly, a jury is not required first to decide the capacity in which Gary and Randall were acting before they can decide which duty of care was owed to plaintiffs with respect to these decisions and whether it was breached.

The facts dictate the conclusion that the decisions to adopt the conduct-based criteria and to grant, or not, distributions to each plaintiff out of his or her partnership account were made in Gary and Randall's capacity as managing partners of RIF. Consequently, whether they breached a duty owed to plaintiffs for these decisions must be determined by applying the duty owed by these partners to their other partners as a matter of law and according to the terms of the amended partnership agreement. That agreement grants sole and absolute discretion to the managing partners with respect to distribution decisions and

imposes liability upon a managing partner only for willful misconduct, gross negligence, or bad faith. Gary's and Randall's decisions regarding non-pro rata distributions are to be judged by the terms of the amended partnership agreement with respect to claims of breach of the duty owed to plaintiffs or their S-Trusts as RIF partners. But as noted above, Gary's initial decision to vote plaintiffs' S-Trusts partnership interests to amend the partnership agreement is to be judged by his trustee-level fiduciary duty to the beneficiaries. Accordingly, consistent with this opinion, the Court of Appeals could find Gary and Randall are entitled to summary judgment for alleged breach of their partnership duties (or, a jury may find no liability in the event summary judgment is reversed) even though it may find Gary is not entitled to summary judgment for alleged breach of his duty as trustee to the beneficiaries.

3. In sum, in *Rollins III*, the Court of Appeals concluded it was unable to render an opinion as to whether the trial court correctly granted summary judgment on the claims arising from Gary and Randall's approval of the RIF partnership agreement amendment and from Gary and Randall's creation of a code of conduct and application of it to distributions made from the plaintiffs' partnership capital accounts, because preliminary issues were created for

26

determination by a jury. Likewise, the Court of Appeals concluded it could not render an opinion as to whether the trial court correctly granted summary judgment to the trustees on plaintiffs' demand for an accounting of the family entities held in the S-Trusts and RCT. The opinion of the Court of Appeals is vacated and that court is directed on remand to follow the rulings set forth in Divisions 1 and 2 in its evaluation of the trial court's grant of summary judgment on these claims.

The Court of Appeals reached no other issues raised in the plaintiffs' appeal of the order granting partial summary judgment to the trustees. For example, the Court of Appeals did not examine the grant of summary judgment on the claims arising out of family entity management. We direct the Court of Appeals, if possible, to determine as a matter of law from the record evidence the role defendants were playing at the time of the remaining conduct at issue in this case and thus the appropriate fiduciary duty to be applied to that conduct, as guided by the conclusions reached in this opinion. Then, the Court of Appeals is directed to apply that fiduciary duty to reach a decision on plaintiffs' appeal of the remaining portions of the trial court's grant of partial summary judgment to the defendants.

Judgment vacated and case remanded with direction. Thompson, C.J., Hines, P.J., Hunstein, Nahmias, and Blackwell, JJ., and Judge Robert D. Leonard II concur. Melton, J., not participating.